**In re TWO GRAND JURY SUBPOENAE DUCES TECUM, One Dated January 28, 1985, the Other Undated.**

**No. 1273, Docket 85–6067.**

United States Court of Appeals,
Second Circuit.

Argued May 24, 1985.

Decided July 25, 1985.

Michael S. Feldberg, New York City (Charles Novack, Shea & Gould, New York City, of counsel), for appellant.

Michael Chertoff, Asst. U.S. Atty., New York City (Stacey J. Moritz, Asst. U.S. Atty., Rudolph W. Giuliani, U.S. Atty. for the S.D. of N.Y., New York City, of counsel), for appellee.

Before FEINBERG, Chief Judge, MANSFIELD and PRATT, Circuit Judges.

GEORGE C. PRATT, Circuit Judge:

This is an expedited appeal from an order entered in the United States District Court for the Southern District of New York, Charles L. Brieant, *Judge*, denying appellant's motion to quash two grand jury subpoenas duces tecum. Appellant is the custodian of records of a corporation whose name, along with the briefs and record in this case, remains under seal to protect the secrecy of the grand jury proceedings. Fed.R.Crim.P. 6(e)(6). Appellant claims

that the effect of the subpoenas is to compel testimony in violation of the fifth amendment "act of production" doctrine. The government has moved to dismiss the appeal on jurisdictional grounds.

We deny the government's motion to dismiss the appeal, and affirm the district court's order declining to quash the subpoenas.

### BACKGROUND

On or about February 7 and 8, 1985, two grand jury subpoenas duces tecum issued by the United States District Court for the Southern District of New York were served at the offices of a corporation ("the corporation") being investigated by the grand jury. One subpoena was addressed to the corporation and called for testimony and production of the corporation's business records. The second subpoena was addressed to "Custodian of Records" of the corporation ("the custodian"), and it, too, called for testimony and production of the corporation's business records.

On February 22, 1985, the custodian moved to quash the subpoenas. At the hearing on the motion before Judge Brieant on March 12, 1985, and in an affidavit accompanying the motion to quash, the custodian's attorney explained that the corporation has three shareholders but is essentially a one-man operation, since the custodian is the corporation's majority shareholder and its sole operating officer and director. The government admitted at the hearing that the custodian is in fact a target of the grand jury investigation. The custodian's argument for quashing the subpoena of corporate records was the "simple proposition" that the Supreme Court's decision in *United States v. Doe,* 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984), means that when records are subpoenaed from a corporation like the one involved here, a corporate representative has a fifth amendment privilege to prevent production of the subpoenaed records, because the act of producing the documents may incriminate him.

After argument the district judge entered an order limiting the subpoenas to corporate business records and declining to quash the subpoenas as limited. The district judge directed that the records "be produced by a person who is not a target and that the government assure whoever produces them that that person is not a target of the grand jury investigation", and he also stated that "any employee of the corporation, who works in the main office where the records are, can be the proper person to produce [the records]."

Because the district court believed that this case presented "an interesting legal question of first impression in this circuit" after the Supreme Court's decision in *United States v. Doe,* 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984), it stayed its order pending appeal. The custodian then brought this expedited appeal, and the government filed a motion with this court asking that the stay be vacated, the appeal dismissed, and the case remanded for further proceedings, such as any contempt adjudication, so that the grand jury investigation would not be further delayed.

### DISCUSSION

A. *The motion to dismiss the appeal.*

The government's motion is based on the general rule that "a person who has been served with a subpoena may not appeal an order denying a motion to quash without first resisting and undergoing the penalty of a citation for contempt." *In re Katz,* 623 F.2d 122, 124 (2d Cir.1980); *see Cobbledick v. United States,* 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940). Appellant's response is that this appeal falls within the exception created by *Perlman v. United States,* 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950 (1918), which allows an immediate appeal from the denial of a motion to quash a subpoena, without at first resisting and being found in contempt, "when the subpoena is directed to a third party and the one seeking to quash the subpoena claims that its enforcement will violate one or more of his constitutional rights." *In re Grand Jury Subpoena Served Upon John*

*Doe, Esq.*, 759 F.2d 968, 970, 971 n. 1 (2d Cir.1985) (citing *Perlman*); *see also In re Katz*, 623 F.2d at 124. Appellant's attorney points out that the subpoenas in question seek records of a corporation, yet it is the custodian of the record—an individual distinct, at least for these purposes, from the corporation—who moves to quash. In these circumstances, the corporation stands in the position of a third party who "will not be expected to risk a contempt citation and will surrender the documents sought, thereby letting the 'cat out of the bag' and precluding effective appellate review at a later stage." *In re Katz, id.* Therefore, the argument goes, the appeal should be allowed pursuant to *Perlman.*

Although one of the subpoenas in question was originally addressed to the custodian himself, rather than to the corporation, the district court's limitations on both subpoenas had the effect of directing them solely to the corporation, which therefore stands as a third party in the present appeal. The district judge specified that the corporation could have the records produced by any employee who works at the main office, and he specifically excluded any grand jury target from having to produce the records. The custodian who brings the present appeal, therefore, is not himself compelled to produce records. Only the corporation is being directed to produce the records, and it is directed to produce them not through the act of the custodian who is appealing, but through the act of some other employee or agent who is not a grand jury target. At least one condition of *Perlman's* third-party subpoena doctrine is therefore met.

■ The district court's order, however, also leaves appellant with a new problem which threatens to take away the fundamental ground for the appeal. Appellant's motion to quash is based on the alleged fact that the act of producing records in this case will compel the custodian to testify against himself. As explained below in section B, in certain circumstances a custodian of records may have a fifth amendment right to refuse to comply with a subpoena directing him, individually, to produce records when the act of producing them would constitute self-incriminating testimony. *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). The problem for appellant is that under the district court's limitation of the subpoenas the custodian as an individual is not required to produce anything at all, and is therefore apparently not being required to testify against himself.

This problem is only partly solved by looking to the custodian's argument that *United States v. Doe*, 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984), changes or extends the act of production doctrine. The custodian's position is that *Doe* gives a corporate representative a fifth amendment privilege to prevent the corporation itself from producing records in at least some circumstances. Other things being equal, such a position would help the custodian's claim that the denial of his motion to quash was immediately appealable. Yet here other things are not equal, because there is an unresolved tension between the argument the custodian gives to support his claim that *Doe* gives him the fifth amendment privilege he wants, and the underlying rationale for the immediate-appeal doctrine of *Perlman.*

To explain this requires anticipating at least part of section B below, which covers the custodian's full argument concerning *Doe* and his fifth amendment rights. The essence of the custodian's argument is that because his corporation is so much like a sole proprietorship, the fifth amendment privilege available to sole proprietors should also be extended to him. The custodian's total position then comes down to this: for purposes of the appeal, he is, under *Perlman*, distinct from the corporation, but for purposes of the act of production doctrine in light of *Doe* he is not distinct from the corporation.

Although this combination of views on appealability and on the act of production doctrine is neither inconsistent nor incoherent, there is little logic to it. The reason for the *Perlman* doctrine is that the party

**56**

seeking an immediate appeal cannot control the third party to whom the subpoena is addressed. *See In Re Katz*, 623 F.2d at 124. Yet here the custodian is arguing that he is in complete control of the corporation, so much so that he is in practical terms not significantly different from a sole proprietor, and that to compel his corporation to testify by producing documents would be to compel him personally to testify. When the custodian argues that he is for practical purposes identical with the corporation, he cuts away any reason to allow an immediate appeal. If appellant is right on the merits of his fifth amendment claim, in other words, he is wrong on the immediate appealability issue.

■ Our decision to allow the appeal rests, in the end, on two points. The first is that, as explained below, we completely reject the custodian's argument on the extent of his fifth amendment rights, and insist on drawing a sharp line between corporations and sole proprietorships. This gives the custodian the necessary formal position to appeal under *Perlman*.

The second point is that the flaws in the custodian's position on appealability only become apparent after reaching the merits of his fifth amendment claims. This means that to dismiss the appeal we would still have to discuss *Doe* and the merits of the appellant's position on the act of production doctrine. In these circumstances there is no point in saving a holding on the merits of the custodian's position until a later and separate appeal.

### B. *The appeal of the order denying the motion to quash.*

Appellant interprets *United States v. Doe* as modifying or extending existing law covering fifth amendment rights of a corporation or of a custodian of corporate records. We disagree. Present law gives the custodian in this case no fifth amendment privilege to stop the corporation from producing documents, and *Doe* does nothing to change or augment the custodian's present rights.

### 1. *Present law on fifth amendment rights of the custodian of corporate records.*

■ Normally a corporate representative or agent cannot claim a fifth amendment privilege against producing corporate documents, regardless of whether they contain information incriminating him or were written by him, and regardless of whether the corporation is large or small. *Bellis v. United States*, 417 U.S. 85, 88–89, 100, 94 S.Ct. 2179, 2182–84, 2189, 40 L.Ed.2d 678 (1974); *In re Grand Jury Subpoenas Duces Tecum*, 722 F.2d 981, 986 (2d Cir.1983). The reason for this is that the corporation itself has no fifth amendment privilege, *Curcio v. United States*, 354 U.S. 118, 122, 77 S.Ct. 1145, 1148, 1 L.Ed.2d 1225 (1957); *Hale v. Henkel*, 201 U.S. 43, 74, 26 S.Ct. 370, 379, 50 L.Ed. 652 (1906), and the only way to prevent the corporation from shielding its records from a subpoena is to prevent individual corporate representatives from exercising such a privilege with respect to corporate records.

In view of the inescapable fact that an artificial entity can only act to produce its records through its individual officers or agents, recognition of the individual's claim of privilege with respect to the financial records of the organization would substantially undermine the unchallenged rule that the organization itself is not entitled to claim any Fifth Amendment privilege, and largely frustrate legitimate governmental regulation of such organizations. Mr. Justice Murphy put it well:

> "The scope and nature of the economic activities of incorporated and unincorporated organizations and their representatives demand that the constitutional power of the federal and state governments to regulate those activities be correspondingly effective. The greater portion of evidence of wrongdoing by an organization or its representatives is usually to be found in the official records and documents of that organization. Were the cloak of the privilege to be thrown around these

impersonal records and documents, effective enforcement of many federal and state laws would be impossible. The framers of the constitutional guarantee against compulsory self-disclosure, who were interested primarily in protecting individual civil liberties, cannot be said to have intended the privilege to be available to protect economic or other interests of such organizations so as to nullify appropriate governmental regulations." [*United States v. White*, 322 U.S. 694, 700, 64 S.Ct. 1248, 1252, 88 L.Ed. 1542 (1944) (citations omitted).]

*Bellis v. United States*, 417 U.S. at 90–91, 94 S.Ct. at 2184–85.

■ In certain limited circumstances, however, an individual may have a fifth amendment privilege against being personally compelled to produce corporate documents. As explained in *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), the act of producing documents may constitute personal testimony conceding the document's existence, their possession or control, or the fact that the one producing them believes them to be the documents described in the subpoena. When this testimony would be self-incriminating, one has a personal fifth amendment privilege to refuse to comply with a subpoena requesting production. This privilege, though, protects a person "only against being incriminated by his own compelled testimonial communications". *Id.* at 409, 96 S.Ct. at 1580. It does not protect an individual from being incriminated by a third party's testimonial act of producing records, *id.*, including acts by a third party which is a corporation.

■ When a corporation is asked to produce records, some individual, of course, must act on the corporation's behalf. Usually this will not create any self-incrimination problem, for an employee who produces his corporation's records "would not be attesting to his personal possession of them but to their existence and possession by the corporation". *In re Grand Jury Subpoenas Duces Tecum*, 722 F.2d at 986.

Yet even if the situation is unusual and a corporation's custodian of records would incriminate himself if he were to act to produce the company's records, this still does not relieve the corporation of its continuing obligation to produce the subpoenaed documents. *United States v. Barth*, 745 F.2d 184, 189 (2d Cir.1984), *cert. denied*, ─── U.S. ───, 105 S.Ct. 1356, 84 L.Ed.2d 378 (1985). In such a situation the corporation must appoint some other employee to produce the records, and if no existing employee could produce records without incriminating himself by such an act, then the corporation may be required to produce the records by supplying an entirely new agent who has no previous connection with the corporation that might place him in a position where his testimonial act of production would be self-incriminating. *Id.* There simply is no situation in which the fifth amendment would prevent a corporation from producing corporate records, for the corporation itself has no fifth amendment privilege. *See id.*

In the present case the district court specifically excluded any grand jury target from having to produce the records, and it provided that the corporation itself could select an employee to produce them. Under existing law this effectively removes any danger that the custodian making the present appeal will have to incriminate himself by an act of producing records. The corporate records in the present case may in fact constitute evidence linking the custodian to crimes, but production of that evidence in the manner limited by the district court would not be compelled testimony of the custodian himself. In short, the custodian cannot claim the fifth amendment privilege to protect records belonging to the corporation, and he himself is not being required to testify through any personal act of production.

2. *Why* United States v. Doe *does not change existing law concerning corporate records.*

*United States v. Doe*, 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984), involved

the subpoena of records of sole proprietorships and a claim by their owner that the fifth amendment prevented the compelled production of the records. The Supreme Court decided that the proprietor could assert the privilege against self-incrimination because, although the contents of the subpoenaed records were not privileged, the testimonial character of the act of producing the records was.

■ The custodian in the present appeal argues that "[w]hile *Doe* involved sole proprietorships, nothing in its holding, its language, or its rationale is limited to sole proprietorships." The custodian apparently reasons that the rationale behind *Doe* is that a sole proprietorship is not legally distinct from its owner, so that a subpoena cannot compel the business to act to produce records without at the same time compelling the owner, as an individual, to act. The act of producing records can constitute compelled testimony, and, according to *Doe*, the act of production may be privileged even if the content of the records is not. In the case before us the corporation is a one-man operation which appellant's attorney describes as "much akin to a sole proprietorship". As appellant sees it, to compel the corporation to produce its records is to compel appellant to act to incriminate himself because the corporation is so closely identified with appellant. Hence, appellant argues, *Doe* covers the present case and gives the custodian his fifth amendment privilege.

We find this argument unpersuasive. The very language of *Doe* limits its holding, for the first sentence of Justice Powell's opinion for the Court unmistakeably states that the issue to be decided concerns sole proprietorships rather than corporations or other collective enterprise forms: "This case presents the issue whether, and to what extent, the Fifth Amendment privilege against compelled self-incrimination applies to the business records *of a sole proprietorship*." *Id.* at 1239 (emphasis added). Nowhere in *Doe* is it said, or even suggested, that the privilege applies when it is corporate records that are subpoenaed.

Appellant argues that *Doe* should be read as covering all documents, those of corporations as well as sole proprietorships, because the Supreme Court's opinion refers simply to the production of "documents", without any limit as to ownership. "Had the Court wished to say that the act of producing documents of a sole proprietorship only might be privileged," appellant maintains, "it would have done so. To the contrary, the Court held that the act of producing *any* document could be privileged."

This is not reasonable. The entire *Doe* case is predicated on the fact that the documents at issue are documents of sole proprietorships, not corporate documents. The Court states that the issue concerns sole proprietorships, and explicitly notes how "puzzling" it is that some records were listed in the subpoena as "corporate" records when "the company named in the subpoena was an unincorporated sole proprietorship." *United States v. Doe*, 104 S.Ct. at 1239 n. 2. In addition, although the Supreme Court notes that the circuit court's decision in *Doe* stressed the difference between fifth amendment law as it applies to corporations and as it applies to sole proprietorships, 104 S.Ct. at 1240, the Supreme Court never indicated that the circuit court's statements on this point were incorrect or overbroad. Appellant's conclusion is actually the inverse of what it should be; the reasonable conclusion is that *Doe*'s holding refers only to documents of a sole proprietorship, and that if the Court had meant to make its holding any broader it would have said so in definite terms.

Moreover, *Doe*'s rationale is clearly limited by the fact that the opinion fails to discuss the long-standing rules set down by the Supreme Court that have limited, emphatically, the fifth amendment privilege in the corporate setting. Since 1906 the Supreme Court has regarded the distinction between an individual and a corporation as vitally important in determining the reach of the fifth amendment. *See Hale v. Henkel*, 201 U.S. 43, 74, 26 S.Ct. 370, 379,

50 L.Ed. 652 (1906). Appellant would have us read *Doe* not only as ending the long and insistent history of restricting the use of the fifth amendment by collective entities, but also, in effect, as overturning the boundaries of the fifth amendment privilege carefully drawn in *Bellis v. United States,* 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974). *Bellis* insisted on drawing a bright line between organizations which have a recognizable, juridical existence apart from their members, such as corporations and partnerships, and those organizations which do not, such as the sole proprietorship. *Bellis* rejected the argument that a three-person partnership was so like a sole proprietorship that a fifth amendment privilege could be asserted when the partnership records were subpoenaed, an argument quite parallel to the one made by appellant in the present case. The custodian here argues that the fifth amendment privilege should be applicable because his three-shareholder corporation is so much like a sole proprietorship. This argument, however, is simply inconsistent with the reasoning in *Bellis.*

Appellant's argument that this circuit has not interpreted *Bellis* as drawing a sharp line against the use of the fifth amendment privilege by collective organizations is not convincing. The appellant claims that in *In re Grand Jury Subpoenas Duces Tecum,* 722 F.2d 981 (2d Cir. 1983), this court applied the act of production doctrine to prevent the government from compelling production of corporate records. But that case involved a former officer of a corporation who had taken the corporation's records without authorization. The subpoena there did not provide that someone else could produce the records in question, and it was clear that if the former officer did produce the records, that fact alone would qualify as testimony incriminating him for having taken those records. Moreover, at the time of the subpoena the former officer was not a corporate representative at all, and the subpoena was not even directed at the corporation. That was totally different from the situation in the present case, and in no way casts doubt on the line drawn in *Bellis.*

Appellant also can extract no help from *In re Katz,* 623 F.2d at 125–26, the other case cited to show that this circuit has not accepted *Bellis* as drawing a sharp line against using the fifth amendment to shield production of corporate documents. *Katz* held only that an individual may claim the fifth amendment privilege on the basis of the act of production doctrine when a subpoena of corporate records is directed at him individually. In *Katz* there was no subpoena directed at the corporations whose records were involved, those corporations had no option to choose who should produce their records, and in no way were the corporations allowed the benefits of the fifth amendment privilege.

The only way we could accept the appellant's position would be if *Doe* overruled or limited *Bellis,* but such an interpretation would be implausible. Nowhere in *Doe* is there any express statement that *Bellis* is overruled or limited, and, given the significance of the issue, it would be unreasonable to suppose that the *Doe* Court intended to do so without expressly stating so. The bright line of *Bellis* still holds. The appellant in the present case chose the corporate form in order to gain its attendant benefits; he cannot now disregard this form in order to shield its business records from production.

Panels in two other circuits have interpreted *Doe* along the lines urged by appellant in the case before us, but the reasoning in those decisions seems conclusory, and both decisions are being reheard in banc. *In re Grand Jury Matter (Brown),* 744 F.2d 338 (3d Cir.1984), *vacated and reh'g granted* (November 20, 1984; reargument heard May 6, 1985); *In re Grand Jury Proceedings (Morganstern),* 747 F.2d 1098 (6th Cir.1984), *reh'g granted* (February 6, 1985; reargument heard June 14, 1985). Nothing in the panel decisions convinces us that our analysis of *Doe* is wrong.

CONCLUSION

The Government's motion to dismiss the appeal is denied. The district court's order limiting the subpoenas and denying appellant's motion to quash the subpoenas as limited is affirmed. The clerk shall issue the mandate forthwith.

MANSFIELD, Circuit Judge (concurring):

I agree with the result and reasoning of Judge Pratt's persuasive opinion except for that portion dealing with the immediate appealability of the district court's order. I would simply hold that, regardless of the inconsistent positions taken by the appellant, in view of the sharp line that must be drawn between the corporate entity toward which the subpoenas are directed and the individual custodian, the requirements of *Perlman v. United States*, 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950 (1918), for immediate appealability are satisfied. *See In re Katz*, 623 F.2d 122, 124 (2d Cir.1980).