UNITED STATES of America, and Guy Tomasicchio, Special Agent, Internal Revenue Service, Plaintiffs-Appellants, Cross-Appellees,

v.

ANTONIO J. SANCETTA, M.D., P.C., Defendant-Appellee, Cross-Appellant,

Dr. Antonio J. Sancetta, Defendant-Appellee, Cross-Appellant.

No. 327, Dockets 85–6107, 85–6179.

United States Court of Appeals, Second Circuit.

Argued Oct. 29, 1985.

Decided April 10, 1986.

Gary D. Gray, Tax Div., Dept. of Justice, Washington, D.C. (Glenn L. Archer, Jr., Asst. Atty. Gen., Raymond J. Dearie, U.S. Atty., Michael L. Paup, William A. Whitledge, Attys. Tax Div., Dept. of Justice, Washington, D.C., of counsel), for plaintiffs-appellants, cross-appellees.

Michael Q. Carey, New York City (Carey & Deinoff, New York City, of counsel), for defendant-appellee, cross-appellant.

Before MESKILL, CARDAMONE, and WINTER, Circuit Judges.

CARDAMONE, Circuit Judge:

The government appeals from an order in a tax enforcement proceeding under 26 U.S.C. § 7402(b) (1982), initiated when a sole shareholder corporate taxpayer and its taxpayer owner contested a summons pursuant to 26 U.S.C. § 7602 (1982) issued against the corporation to obtain corporate records. The corporate taxpayer has cross-appealed. One question raised is whether the district court may designate a person to search the corporate taxpayer's office for records without first finding that the records being searched for in fact exist and that the taxpayer possesses them. A second question presented is whether the sole shareholder may refuse to produce corporate checking account records by claiming that the act of production would incriminate him.

With respect to the first issue, we hold that the trial court's findings that the records existed at one time and that the taxpayer had failed to carry its burden of proof on the affirmative defense of nonpossession were adequate to support the search order. Hence, on this issue we affirm. But, since the district court held that the act of production would incriminate the taxpayer, apparently because it believed that a sole shareholder should be treated like a sole proprietor, we must reverse on this second issue.

### I Facts and Proceedings Below

In 1984 the Criminal Investigation Division of the Internal Revenue Service (IRS) commenced an inquiry into the federal income tax liabilities of Antonio J. Sancetta, M.D. for the years 1980 and 1981. On February 1, 1984 Special Agent Tomasicchio issued a summons to Dr. Sancetta's medical corporation, Antonio J. Sancetta, M.D., P.C. (Sancetta Corp.).[1] Although ad-

---

**1.** Section 7602 of the Internal Revenue Code, 26 U.S.C. § 7602(a) (1982) provides:

For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary is authorized—

    (1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;

dressed to the corporation, the summons was personally served on Dr. Sancetta who is the sole shareholder and director of Sancetta Corp., as well as its President, Vice-President and Treasurer. The only other official connected to the corporation is Dr. Sancetta's wife who serves as its Secretary. The summons commands appellee corporation to appear, testify and produce the following corporate documents for the years April 1, 1979 through April 30, 1982:

   (1) All ledgers, journals and workpapers reflecting cash receipts, receivables, payables, loans, disbursements, payroll (941's, including 1099's and W–2's), administrative expenses, petty cash and assets.

   (2) All patient account records including daybook or calendar, history account cards, collection referrals, billing and payment records.

   (3) All health insurance claim and payment records.

   (4) All monthly bank statements, deposit tickets and cancelled checks for the corporate checking account and the records of all other corporate bank accounts.

   (5) All other records of Antonio J. Sancetta, M.D., P.C. relevant to the preparation of tax returns.

Dr. Sancetta appeared in response to the summons but refused either to produce the requested documents or give testimony concerning their contents. The IRS then petitioned the United States District Court for the Eastern District of New York (Weinstein, Ch. J.) for an order enforcing the summons. The district court ordered the corporation to show cause why it should not be compelled to obey the summons. Dr. Sancetta moved to intervene and filed a proposed answer on the same day that the corporation responded to the

enforcement petition. Both answers opposed the summons on the grounds that it "seeks the production of books, records, papers and other data, which, if they exist, have an undetermined ownership and location." Dr. Sancetta additionally asserted that the records were protected by the Fifth Amendment privilege against self-incrimination and by the doctor-patient privilege, and that the summons as issued was not sufficiently particular.

At a preliminary hearing, the district court found that Dr. Sancetta's Fifth Amendment objection precluded enforcement because a corporation formed solely for tax purposes by one person is "purely ephemeral. It doesn't exist. There is no corporation. [It is simply] a corporate idea." At a subsequent hearing the district judge modified this view somewhat and ordered on April 25, 1985 that Dr. Sancetta produce, through his secretary Gladys B. Endersby, all relevant patient account cards, health insurance forms, and patient appointment books, if they are found to exist, after a search of the corporation's office. The order did not enforce the summons with respect to monthly bank account statements, deposit tickets and cancelled checks for the corporate checking account.

The hearing record reveals that agent Tomasicchio relied on an earlier interview he and another agent had with Dr. Sancetta to establish the existence and Dr. Sancetta's possession of the requested records. Agent Tomasicchio stated that during the interview Dr. Sancetta admitted keeping each patient's account cards in his office during the relevant tax years and maintaining the corporate checking account records at home. Dr. Sancetta further admitted that his accountant had used the checking account statements and cancelled checks to

   (2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary may deem proper, to appear

before the Secretary at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and

   (3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry.

prepare the corporation's tax returns for the fiscal years 1979–1981.

The district court found that these records were probably in the doctor's possession unless he had previously destroyed them. Abandoning the view that Dr. Sancetta's Fifth Amendment privilege as the corporation's sole owner precluded production, the trial court held that because these banking records were kept in Dr. Sancetta's home, only an order to produce the records against him personally (rather than a summons issued to the corporation) would be effective. The court thereupon refused to require Dr. Sancetta to produce these records personally, presumably because it believed the act of production would incriminate him.

The government appeals only from that part of the district court's order denying enforcement of the summons relating to the corporation's checking account records because the corporation has delivered all the relevant patient account cards and health insurance forms. The corporation and Dr. Sancetta appeal only from that part of the order—which we have stayed—requiring Mrs. Endersby to search the corporate offices for the corporation's patient appointment books for the relevant periods and, if they exist, to produce them.

## II  Challenging the Existence and the Possession of the Subpoenaed Records

■ To obtain enforcement of an IRS summons, the government must demonstrate that the summons is issued for a proper purpose, the inquiry may be relevant to that purpose, the information sought is not already within the Commissioner's possession, and the appropriate administrative steps have been followed. *United States v. Powell*, 379 U.S. 48, 57–58, 85 S.Ct. 248, 254–55, 13 L.Ed.2d 112 (1964). Once the government establishes a prima facie case for enforcement, the burden shifts to the taxpayer to disprove one of the four *Powell* criteria, or to demonstrate that judicial enforcement of the subpoena should be denied as an abuse of the court's process. *United States v. Centennial Builders, Inc.*, 747 F.2d 678, 680 (11th

Cir.1984); *United States v. Barth*, 745 F.2d 184, 186–87 (2d Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1356, 84 L.Ed.2d 378; *United States v. Beacon Federal Savings & Loan,* 718 F.2d 49, 52 (2d Cir.1983); *United States v. Davey,* 543 F.2d 996, 1000 (2d Cir.1976). Other defenses, such as non-possession or a showing that the documents do not exist, may also be asserted. *United States v. Rylander,* 460 U.S. 752, 757, 103 S.Ct. 1548, 1552, 75 L.Ed.2d 521 (1983); *Barth,* 745 F.2d at 187.

■ The government enforcement petition satisfied the *Powell* requirements. The summons for Sancetta Corp.'s appointment books and corporate checking account records was properly issued to determine Dr. Sancetta's correct tax liability for the years under investigation and for the IRS to assess whether Dr. Sancetta should be prosecuted for income tax evasion or in a civil suit for fraud. The enumerated documents are plainly relevant to these determinations and the information sought is not already in the possession of the IRS. Moreover, all appropriate administrative steps were followed and a prima facie showing of the existence and personal possession by Dr. Sancetta of all corporate checking account documents was made by the IRS Agent in his January 28, 1985 affidavit.

Appellee does not seriously dispute that the prima facie *Powell* showing was made. Rather, he contends that the government had the burden of proving the existence and location of the subpoenaed records. More particularly, with regard to the checking account records, appellee asserts that his answers to Agent Tomasicchio's February 1, 1984 questions were confused, because he did not understand that he was being asked whether he kept the 1979–1981 records at home. The claimed confusion is not convincing. Despite some minor discrepancies in the accounts of those conversations given by the two IRS agents, it is clear that Dr. Sancetta understood the questions and gave appropriate answers. Regarding the patient appointment books, Sancetta further asserts that both he and

Mrs. Endersby affirmatively denied their current existence for the years 1979–82. Given this, Dr. Sancetta argues that the district court's statement that it did not know whether they existed was an improper basis for it then to issue an order directing Mrs. Endersby to search the corporate offices to determine the existence of the patient appointment books. We discuss these summoned records separately.

### A. *Possession of the Corporate Checking Account Records*

Dr. Sancetta failed to meet his burden of proving either the records' nonexistence or that he did not possess them. Not only did he fail to make such a showing, but the government affirmatively established—through Agent Tomasicchio's affidavit—evidence of Sancetta's possession of the corporate checking account records. Appellee nonetheless claims that the district court did not make the required finding respecting the existence of these records and his possession of them. Quite to the contrary, it is clear that the district court did determine that the relevant records existed and that Dr. Sancetta possessed them.

■ Regarding the requirement of a finding of possession, we said in *Barth* that the issuance of an enforcement order constitutes an adjudication that the respondent possesses and is able to produce the summoned documents at the time the order is issued. But if an enforcement order is contested, a court cannot impliedly find possession. "Before ordering production on penalty of contempt, the district court should expressly determine that the respondent possesses the summoned documents." *Barth*, 745 F.2d at 187. Further, when possession or existence is contested during an enforcement proceeding and both are expressly found by the district court, then the issues of possession and of existence cannot later be raised either on appeal or in a contempt proceeding, except when the summoned party alleges a present inability to perform because of nonpossession. *See Rylander*, 460 U.S. at 757, 103 S.Ct. at 1552.

■ Here the government first argues that Dr. Sancetta's answer which stated that the summons sought records "which, if they exist, have an undetermined ownership and location," did not seriously controvert possession. From this premise, the government continues, Sancetta's ambiguous answer did not require the district court to make a finding of possession as to any of the documents. Although it is a close question, we believe that appellee's answer—though inartfully drawn—disputed to some degree possession of the documents, as well as their existence for the relevant tax years.

■ There may be a good reason why a record no longer exists, though obviously destroying records to avoid paying taxes is not one. For example, when Samuel Johnson was asked why he had not printed a list of paying subscribers he reasonably responded: "Sir, I have two very cogent reasons for not printing any list of subscribers;—one, that I have lost all the names,—the other, that I have spent all the money." J. Boswell, *The Life of Samuel Johnson*, 530 (Collins ed.). During an enforcement proceeding, it is clear there must be a finding of present possession of summoned property because in the event of a later contempt proceeding, taxpayers may not raise their defense of nonpossession for the first time. *Rylander*, 460 U.S. at 757, 103 S.Ct. at 1552; *Barth*, 745 F.2d at 187. That is to say, the issue should be litigated before contempt proceedings are instituted. Once such finding has been made an inference of continuing possession may be drawn. *Rylander*, 460 U.S. at 761 n. 3, 103 S.Ct. at 1554 n. 3. Thus, the district court was required to and it did make an express finding regarding the existence of the corporate checking account records and Dr. Sancetta's possession of them. It stated that these records were "highly probably in the doctor's possession if he hasn't destroyed them already."

Reasonably read the quoted statement indicates the district judge's belief that Dr. Sancetta had always kept these records in his possession, and that they would still be

in his possession if he had not destroyed them during the time between the issuance of the summons and the enforcement proceeding. Such a finding of possession is adequate inasmuch as there was no allegation that the records had been either recently destroyed or lost. Whatever dispute there was as to possession extended only to the fact that records for certain years were never kept or were held by someone else, such as Sancetta's accountant. Hence, the district court's finding of present possession of these records warrants an inference of continuing possession at the time of the enforcement proceeding. *Rylander*, 460 U.S. at 761 n. 3, 103 S.Ct. at 1554 n. 3.

### B. *Patient Appointment Books*

The patient appointment books—which the district court ordered appellee's secretary to search Sancetta's office for—pose a different problem. The existence of these books was also disputed, but the district court did not explicitly find that they existed. The district court directed Mrs. Endersby to search the corporate offices to determine if they exist, but it did find that they existed at one time and that Dr. Sancetta had not sustained his burden on the affirmative defense of nonpossession. Because the order directed a *search* for the appointment books with a further direction that the books be produced only if the search indicated that they exist, we hold that the district court's findings were adequate to support the order. The potentially drastic consequences of a later contempt proceeding based on a failure to produce are not posed when an order directs a search for documents, with a direction to produce conditioned upon the search's success. *Cf. United States v. Barth*, 745 F.2d at 187.

### III *Fifth Amendment Privilege*

### A. *Compelled Testimony*

Under the Fifth Amendment there are two instances where an individual can refuse to comply with a subpoena requesting discovery of specified documents. These are: (1) the privilege against com-

pelled testimony; and (2) the act of production doctrine. We examine each in turn.

The Fifth Amendment guarantees that "no person can be compelled to be a witness against himself." Forcing disclosure of a document that is not voluntarily prepared can be tantamount to compelled testimony. But when a document is voluntarily prepared, testimonial self-incrimination is not compelled. *Fisher v. United States*, 425 U.S. 391, 409–11, 96 S.Ct. 1569, 1580–81, 48 L.Ed.2d 39 (1976). A corporation as an artificial collective entity has no Fifth Amendment privilege, see *Bellis v. United States*, 417 U.S. 85, 89–93, 94 S.Ct. 2179, 2183–85, 40 L.Ed.2d 678 (1974); *Curcio v. United States*, 354 U.S. 118, 122–23, 77 S.Ct. 1145, 1148–49, 1 L.Ed.2d 1225 (1957); *In re Two Grand Jury Subpoenae Duces Tecum*, 769 F.2d 52, 57–58 (2d Cir. 1985), that shields its documents from disclosure. Thus, as a corporate entity, Sancetta Corp. may not invoke any Fifth Amendment privilege.

Dr. Sancetta asks us to look beyond the corporation's form to its substance. In undertaking such an inquiry, he asserts, we will discover that Sancetta Corp. is really a sole proprietorship. Once it is found to be a sole proprietorship, he argues, consistent with *United States v. Doe*, 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984), the records are privileged from being produced. It is unnecessary to engage in such inquiry and even were we to do so, Sancetta's argument will not carry the day. Appellee misapprehends the thrust of *Doe*, which involved a sole proprietorship. With respect to compelled testimony involved in producing voluntarily prepared documents, *Doe* is fully consistent with *Fisher* and draws heavily from it. *Id.* at 610–12, 104 S.Ct. at 1241–42. *Doe* held that if documents are voluntarily prepared and the subpoena does not "force ... [the appellant] to restate, repeat, or affirm the truth of their contents", no Fifth Amendment privilege attaches. *Id.* at 612, 104 S.Ct. at 1242. Therefore, the form of the entity is irrelevant to this inquiry.

## B. *The Act of Production Doctrine*

While the contents of documents may not be privileged, the Supreme Court in *Fisher* recognized that in some cases the mere *act* of producing them in response to a subpoena could constitute a kind of testimonial compulsion safeguarded by the Fifth Amendment. The Court said that "[c]ompliance with the subpoena tacitly concedes the existence of the papers demanded and their possession or control by the taxpayer. It also would indicate the taxpayer's belief that the papers are those described in the subpoena." 425 U.S. at 410, 96 S.Ct. at 1581. The Fifth Amendment question raised by a demand for production is whether the act of producing is both testimonial and incriminating. The answer depends on the facts and circumstances of each case. *Id.*

■■■ The district court held that Dr. Sancetta could not be required personally to produce the records because the act of production would incriminate him. While a particular individual may not be compelled to produce documents due to the act of production doctrine, as it is now known, the corporation itself does not escape its responsibility to make the summoned records available. "There simply is no situation in which the fifth amendment would prevent a corporation from producing corporate records, for the corporation itself has no fifth amendment privilege." *In re Two Grand Jury Subpoenae Duces Tecum,* 769 F.2d at 57. The corporation must appoint a person to produce the documents, even if it involves going outside the corporate structure to appoint a special agent simply to perform that task. *Barth,* 745 F.2d at 189.

Appellee argues that he should enjoy the Fifth Amendment privilege applicable to a sole proprietor because an individual who chooses to incorporate solely to obtain certain corporate tax advantages should not be burdened by that choice of form for all purposes, if in fact the substance of the entity is better characterized as something else. We have already rejected this argument as it applies to the act of production doctrine. *In re Two Grand Jury Subpoenae Duces Tecum,* 769 F.2d 52. In that case, we ruled that a subpoena which did not require any particular corporate officer to produce corporation records, but which was intended only to compel the corporation as an entity to produce those records, did not afford the custodian of records—concededly the target of a grand jury investigation—any Fifth Amendment right to resist the subpoena under either the act of production doctrine or the holding in *United States v. Doe.* The district court in *In re Two Grand Jury Subpoenae Duces Tecum* had directed that the records be produced by a person who was not a target of the grand jury investigation.

We held that the subpoena required only that the corporation produce the records—not necessarily through the act of the custodian—but through any designated corporate employee or agent. Defendant argued that the corporation, which had three shareholders, was essentially a one-man corporation since he was the majority shareholder, sole operating officer, and a director. It was defendant's view there, as here, that he more closely resembled a sole proprietorship and therefore producing the records would be an act attributable to him. We refused to look beyond the entity form chosen and consider whether in substance a corporation headed by taxpayer with two other member-shareholders more resembled a sole proprietorship than a corporation. Rather, a strict rule was adopted which drew "a sharp line between corporations and sole proprietorships." *Id.* at 56. "The appellant in the present case chose the corporate form in order to gain its attendant benefits; he cannot now disregard this form in order to shield its business records from production." *Id.* at 59. Here the district court erroneously held that this sole stockholder resembled a sole proprietor and that therefore the act of production incriminated him. Even though Sancetta cannot claim to be a sole proprietor, the act of production might incriminate him as a corporate agent. Even were it to incriminate him, another agent could be

appointed by Sancetta Corp. or by the court to produce the records.

■ Sancetta also claims heightened privacy because the records are in his home. If a person chooses to take home banking records belonging to the corporation his home may be entered as any corporate building could be. The fact that an individual corporate representative elects to keep corporate records in his home is not a relevant consideration. Different legal standards cannot be applied to those corporate custodians who take records home without risking complete erosion of the rules governing the production of corporate records. Such an act by one running his own corporate business cannot result in some heightened claim of privacy in the records on his part.

In sum, a sole stockholder of a corporation cannot avoid being compelled to produce records under the Fifth Amendment on the grounds that his sole stockholder corporation is a sole proprietorship. But, an individual stockholder, as any other representative of a collective entity, may assert that the act of production incriminates him. If his personal claim is successful, the records must be produced by another.

## CONCLUSION

The order requiring Mrs. Endersby to search Sancetta's office for the patient appointment books and to produce them if they exist is affirmed. The district court's refusal to require production of all corporate checking account records is reversed because Dr. Sancetta's possession of them at home has been determined and the contents of the records themselves are not privileged.

Affirmed in part and reversed in part.