**In the Matter of the GRAND JURY SUBPOENA JUNE 12, 1986.**

**Misc. No. N–86–2126.**

United States District Court, D. Maryland.

Dec. 18, 1986.

to the Second Circuit's prior decision in this case.

Jerald J. Oppel, Kevin A. Dunne, and Ober, Kaler, Grimes & Shriver of Baltimore, Md., and George M. Burditt, Eric F. Greenberg, and Burditt, Bowles & Radzius, Ltd., Washington, D.C., for movant.

Max H. Lauten, Asst. U.S. Atty., D.Md., and Anita Johnson, of the Office of Consumer Litigation of the U.S. Dept. of Justice, Washington, D.C., for the Government.

## MEMORANDUM

NORTHROP, Senior District Judge.

By order dated October 3, 1986, this Court denied a motion to quash[1] and ordered a certain corporation[2] ("the corporation") engaged in the manufacture of prescription drugs to comply with a subpoena duces tecum issued by the grand jury in the District of Maryland and directed to the corporation. The order of October 3rd, commanded the corporation to begin producing a portion of the subpoenaed documents within 30 days of that date. On October 29, 1986 pursuant to Fed.R.Crim.P. 17(c) the corporation filed a renewed motion to quash the grand jury subpoena on a ground not raised in its earlier motion, contending that the subpoena violates the Fifth Amendment's prohibition against compelled self-incrimination.

After a careful review of the pleadings submitted by the parties in this case, the Court finds that no hearing is necessary. Local Rule 6. For the reasons set out below the corporation's renewed motion to quash will be denied.

The subpoenaed corporation is a business involved in the manufacture, production and distribution of generic prescription drugs. Stock in the company is held by four shareholders. The company's founder and president ("the president") owns 97 per cent of the stock while three of his children each own one per cent. Carl Turner, a Food and Drug Administration Compliance officer familiar with the operation of the corporation, estimated, in an affidavit, that the subpoenaed corporation has a gross income in excess of $50,000,000 and employs over 100 employees.

In August of 1985, the United States Government filed a civil suit against the corporation, its president and another indi-

---

1. In its original motion the Corporation urged that the subpoena be quashed on three grounds contending that: 1) the subpoena was improperly served; 2) compliance with the subpoena would be oppressive and unreasonable, and 3) that the subpoena violated the Fourth Amendment.

2. In the interest of preserving the secrecy of the ongoing grand jury investigation which produced this subpoena, the subpoenaed corporation will be referred to as "the corporation" and the corporation's president will be called "the president" throughout this opinion. The original motion filed in this sealed matter identifies the parties.

vidual alleging violations of the Federal Food, Drug and Cosmetic Act. This suit was resolved on November 4, 1985 when the parties entered into a consent decree of permanent injunction which enjoined the defendants from introducing or delivering for introduction into interstate commerce any drug manufactured, processed, packed, labeled or held at the plant unless and until all such procedures were conducted in conformity with good manufacturing practice regulations. In the consent decree, the defendants agreed to maintain a variety of records relating to the manufacture and distribution of these drugs and to make these documents available to the Food and Drug Administration (FDA) for inspection and copying.

On June 12, 1986, the grand jury in the District of Maryland issued a subpoena duces tecum to the corporation in furtherance of an investigation of illegal practices in the manufacture of prescription drugs. The subpoena sought the production of sixteen categories of documents relating to the corporation's production and distribution of certain drugs, most of which were prepared by the corporation's manufacturing and quality control personnel during the period of 1983–1985.[3] The corporation has estimated that the subpoena would require the production of approximately one million documents.

Service of the subpoena was effected on July 24, 1986 when it was delivered to an accountant employed by the corporation. The subpoena is directed solely to the corporation itself. The definition section of the subpoena makes clear, however, that where a paragraph of the subpoena refers to the corporation by name this request encompasses relevant records prepared, not only by the corporation and a second specified company, but also those generated by "all affiliated predecessor and successor corporations, partnerships and other legal entities, and all officers, agents, ser-

vants, employees and/or consultants in active concert or participation with any of the foregoing who are acting for such companies or entities, wherever located."

In the presently pending renewed motion to quash, the president of the subpoenaed corporation claims that he is entitled to assert a fifth amendment privilege against self incrimination as to the subpoenaed documents and the act of producing them. The Court must first consider whether the president of the corporation may avail himself of the protection afforded by this privilege.

■ It is well settled fifth amendment jurisprudence that the privilege against compulsory self incrimination "is essentially a personal one, applying only to natural individuals." *United States v. White*, 322 U.S. 694, 698, 64 S.Ct. 1248, 1251, 88 L.Ed. 1542 (1944). Thus, although a sole proprietor or sole practitioner may claim the privilege, a collective entity "an organization which is recognized as an independent entity apart from its members", may not. *Bellis v. United States*, 417 U.S. 85, 88–89, 92, 94 S.Ct. 2179, 2182–2183, 2185, 40 L.Ed.2d 678 (1974).

■ Since a corporation, as a collective entity, has no Fifth Amendment privilege of its own, the Supreme Court has repeatedly held that when a subpoena seeks corporate records, an individual may not assert a Fifth Amendment privilege to avoid producing potentially incriminating corporate records which are in his possession in a representative capacity. *Bellis*, 94 S.Ct. at 2183. "It is well settled that no privilege can be claimed by the custodian of corporate records, regardless of how small the corporation may be." *Id.* at 2189. This rule applies whether the subpoena is addressed to the corporation itself or to an individual in his representative capacity. *Wilson v. United States*, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911) (subpoena

---

**3.** Specifically, the subpoena requests the production of Receiving Records, Inventory Use Records, Receiving and Inventory Records for Aspartame, Batch Records, Master Production and Control Records, Laboratory Test Records, Laboratory Test Records of Components, Distri- bution Records, Deficient Product Records, Returned Drug Records, Investigation Records, Personnel Records, Media Fill Records, Equipment Records, Complaint Records and Consultant Reports.

directed to corporation); *Dreier v. United States,* 221 U.S. 394, 31 S.Ct. 550, 55 L.Ed. 784 (1911) (subpoena directed to individual corporate officer).

In *Bellis,* the Supreme Court identified two primary reasons underlying the refusal to allow a corporate representative to claim a Fifth Amendment privilege when corporate documents are requested by the government. First, the Supreme Court has consistently stressed that the Fifth Amendment privilege was designed to protect individuals and was not meant to restrict valid governmental regulation of economic entities. "The framers of the constitutional guarantee against compulsory self disclosure, who were interested in protecting individual civil liberties, cannot be said to have intended the privilege to be available to protect economic or other interests of such organizations so as to nullify appropriate government regulations." *Id.* 417 U.S. at 92, 94 S.Ct. at 2184, quoting *United States v. White,* 322 U.S. at 700, 64 S.Ct. at 1251. In view of that fact that corporate records can be produced only through the acts of its of agents or officers, the Court recognized that granting a Fifth Amendment privilege to such individuals would undermine the rule that a corporation cannot claim the privilege and "largely frustrate legitimate governmental regulation of such organizations." *Bellis,* 417 U.S. at 91, 94 S.Ct. at 2184.

The second basis for the rule rested upon the privacy rationale often ascribed to the Fifth Amendment privilege. Traditional Fifth Amendment analysis held that the privilege was conceived in order to ensure that an individual's privacy remain sacrosanct. Thus, the Fifth Amendment was to protect "a private 'inner sanctum which necessarily includes an individual's papers and effects to the extent that the privilege bars their compulsory production and authentication—and "proscribes state intrusion to extract self condemnation." ' " *Id.* at 92, 94 S.Ct. at 2184–85, quoting *Couch v.*

*United States,* 409 U.S. 322, 327, 93 S.Ct. 611, 615, 34 L.Ed.2d 548 (1973). The records of a collective entity, even where under an individual custodian's control, could not lay claim to such a protected privacy interest. Unlike an individual's personal papers, these documents, often regulated by statute and accessible to a variety of people, were held to have taken on a public character.

In the case at bar, the corporation's president claims that he is entitled to assert a Fifth Amendment privilege on two bases. First, he contends that the corporation, in this case, ought to be treated as a sole proprietorship. Alternatively, he argues that the Supreme Court's decisions in *Fisher v. United States,* 425 U.S. 391, 412, 96 S.Ct. 1569, 1581, 48 L.Ed.2d 39 (1976) and *United States v. Doe,* 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984) have altered the traditional analysis of the Fifth Amendment privilege so as call into question the continuing viability of the collective entity doctrine discussed in *Bellis.*

Turning first to the characterization of the business in this case, the president urges the court to disregard the company's corporate form and treat it as a sole proprietorship. In support, the president contends that because he owns 97% of the stock and is the only shareholder involved in the management of the company as well as its president and founder, the business is actually a de-facto sole proprietorship. As a sole proprietorship he then claims a Fifth Amendment privilege as to both the contents of the requested records and the act of producing them.

 A sole proprietorship may claim a Fifth Amendment privilege as to its business records, *Bellis,* 94 S.Ct. at 2182–83, and the act of producing such documents, *United States v. Doe,* 104 S.Ct. at 1239, 1245. A bright line, however, has been drawn between a sole proprietorship, inseparable from its owner, and a corporation, the quintessential collective entity.[4]

---

**4.** The Court's unwillingness to regard a corporation as anything but a collective entity is in contrast to its recognition that a partnership might, in some very limited circumstances, be treated as a sole proprietorship. *Bellis,* 94 S.Ct. at 2189; *In Re Jury Subpoena Duces Tecum (Doe),* 605 F.Supp. 174, 175 (S.D.N.Y.1985). Cases cited by the corporation dealing with the

In *Bellis*, the Supreme Court made clear that the prohibition against corporate use of the Fifth Amendment privilege applies regardless of the size of the corporation. *Bellis*, 94 S.Ct. at 2189. Courts have consistently refused to disregard the corporate form where an individual has chosen to do business as such. *See e.g. In re Two Grand Jury Subpoenae Duces Tecum*, 769 F.2d 52, 59 (2d Cir.1985) (three shareholder corporation in which majority shareholder was sole operating officer and director); *United States v. Antonio J. Sancetta, M.D., P.C.*, 788 F.2d 67, 74 (2d Cir.1986) (corporation composed of one shareholder who also served as its director, president, vice-president and treasurer).

■ In the case at bar, the president of the subpoenaed corporation, like the appellant in *Two Grand Jury Subpoenae*, chose to do business in the corporate form "in order to gain its attendant benefits; he cannot now disregard this form in order to shield its business records from production." 769 F.2d at 59. Hence, this Court will not treat the subpoenaed corporation as a sole proprietorship for purposes of applying the Fifth Amendment privilege.

Next, the president of the corporation contends that, even if the corporation is not viewed as a sole proprietorship, he is still entitled to assert a Fifth Amendment privilege under the act of production standard set out by the Supreme Court in *Fisher* and *Doe*.

In *Fisher*, the Court re-examined the purported rationale underlying the Fifth Amendment privilege. Eschewing the traditional privacy analysis employed in many previous cases, the Court sought to refocus the inquiry: "[w]e cannot cut the Fifth Amendment completely loose from the moorings of its language, and make it serve as a general protector of privacy.... We adhere to the view that the Fifth Amendment protects against 'compelled self-incrimination, not [the disclosure of] private information.'" 96 S.Ct. at 1576, quoting *United States v. Nobles*, 422 U.S. at 225, 233 n. 7, 95 S.Ct. at 2160 (1975). Thus, the Court held that, in order to claim

the privilege, an individual must demonstrate the presence of personal compulsion being used to illicit testimonial self-incrimination. The Court went on to find that an individual's act of producing evidence in response to a subpoena contained the requisite element of compulsion. If such a compelled act also forced an individual to produce evidence which was both testimonial and incriminating, the Fifth Amendment privilege would attach. *Id.* at 1581.

Subsequently, in *United States v. Doe*, the Supreme Court held that the act of production doctrine, outlined in *Fisher*, applied to a sole proprietor seeking to claim the Fifth Amendment privilege against producing voluntarily prepared business records in response to a government subpoena. 104 S.Ct. at 1245. There, the Court accepted the lower courts' findings that compliance with the subpoena would involve testimonial self incrimination since, by producing the documents, the subpoenaed individual would admit the existence of the records, his possession of them and their authenticity. *Id.* at 1243.

In the case at bar, the president seeks to invoke the Fifth Amendment privilege based upon the act of production doctrine outlined in *Fisher* and *Doe*. While recognizing that *Doe* involved a subpoena issued to a sole proprietor, the president argues that "nothing in the language, rationale, or holding in this case would indicate that the standard announced for determining the application of the privilege against self incrimination to compelled production of documents is to be applied only to documents held by a sole proprietorship." Movant's Memorandum in Support of Renewed Motion to Quash Grand Jury Subpoena. In effect, the president urges this Court to rule that, in refocusing traditional analysis of the scope of the Fifth Amendment privilege, *Fisher* and *Doe* tacitly abolished the collective entity doctrine of *Bellis*.

The Fourth Circuit recently addressed this very issue in *United States v. Lang*, 792 F.2d 1235 (4th Cir.1986). There the court was asked to decide whether a sub-

characterization of a partnership are thus inap- posite here.

poenaed individual, holding corporate documents in a representative capacity, might claim a fifth amendment privilege against the act of producing the documents.

In considering this issue, the Fourth Circuit acknowledged the impact of *Fisher* and *Doe* on this area, noting that the "clear division between production of papers with personal content and corporate content has been blurred by recent court decisions shifting the focus away from the privacy interest of an individual in his personal papers and toward protection against testimonial self-incrimination." *Id.* at 1238.

The Court went on to survey the treatment other circuits have accorded the collective entity doctrine in light of these recent cases. They found that the majority of circuits have affirmed the continuing validity of this doctrine despite the holdings in *Fisher* and *Doe. Id.* at 1239. *See e.g., In re Grand Jury Proceedings (Vargas),* 727 F.2d 941, 945 (10th Cir.1984), *cert. denied,* 469 U.S. 819, 105 S.Ct. 90, 83 L.Ed.2d 37 (1984); *In re Grand Jury Proceedings (Morganstern),* 771 F.2d 143 (6th Cir.1985). Only the Third Circuit has held that as a general matter a corporate custodian to whom a subpoena is addressed may invoke the fifth amendment privilege as to documents held in a representative capacity. *Id.* at 1239. *See In re Grand Jury Matter (Brown),* 768 F.2d 525, 528 (3d Cir. 1985) (*en banc* ).[5]

Declining to adopt either of these approaches, the Fourth Circuit opted to follow the rule established by the Second Circuit in *In re Two Grand Jury Subpoenae Duces Tecum,* 769 F.2d 52 (2d Cir.1985). The Fourth Circuit summarized the Second Circuit's approach as follows:

.. [t]he basic rule of *Bellis* continues after *Doe,* and normally a corporate representative or agent cannot claim a fifth amendment privilege against producing corporate documents. There will be rare occasions where an individual's produc-

tion of those documents may amount to testimonial self-incrimination. In those limited circumstances, the individual has a personal fifth amendment privilege, but the corporation must comply with the summons through some other person. *Lang,* 792 F.2d at 1240–41. Thus, it is clear that the collective entity doctrine enunciated in *Bellis* survives, basically intact, in the Fourth Circuit.

■ The Court, however, must consider whether the case at bar presents one of those "rare occasions" in which a corporate representative is entitled to claim a personal fifth amendment privilege against the act of producing corporate documents. For this unusual circumstance to occur, "[t]he individual must be personally compelled to produce and authenticate corporate records and those acts must be self-incriminatory." *Lang,* 792 F.2d at 1240.

■ Such a situation is not posed by the instant case, for here, the element of personal compulsion against the corporation's president is lacking. The subpoena in this case was addressed neither to the president as an individual nor to the president in a representative capacity. The subpoena is directed solely to the corporation.

■ As the Supreme Court made clear in *Fisher,* the element of *personal* compulsion is an essential prerequisite to the invocation of the Fifth Amendment privilege. 96 S.Ct. at 1574. There, the Court held that a taxpayer was not entitled to assert the privilege to bar enforcement of a summons directing his attorney to produce documents the taxpayer had placed in his care. The Court reasoned,

" '[t]he Amendment is limited to a person who shall be compelled in any criminal case to be a witness against *himself.*' (Emphasis in original.) 'It is extortion of information from the accused himself that offends our sense of justice.'

---

**5.** Shortly before the Fourth Circuit's decision in *Lang,* the Eighth Circuit joined the circuits cited in *Lang* and upheld the collective entity doctrine. In apparent recognition of the conflict between the Third Circuit and the other circuits who have addressed this issue, the Supreme

Court granted certiorari in the Eighth Circuit case. *See, In Re Grand Jury Subpoena (85–W–71–5),* 784 F.2d 857, 861–62 (8th Cir.1986), *cert. granted, See v. United States,* —— U.S. ——, 107 S.Ct. 59, 93 L.Ed.2d 18 (1986).

*Couch v. United States, supra,* 409 U.S. at 328, 93 S.Ct. at 616, 34 L.Ed.2d at 554. Agent or not, the lawyer is not the taxpayer. The taxpayer is the 'accused,' and nothing is being extorted from him." *Id.*[6]

In the case presently before this Court, the subpoena compels only the corporation, not the president to produce corporate records. Thus, the Court faces a factual situation similar to that in *In re Grand Jury Subpoenas Issued to Thirteen Corps.,* 775 F.2d 43 (2d Cir.1985). There, the government issued subpoenas to thirteen corporations. Despite the fact that the subpoenas were addressed solely to the corporations, an individual intimately involved in the management of the various corporations sought to invoke a personal Fifth Amendment privilege against producing certain corporate documents in his possession. The court refused to quash the subpoenas commenting that "[b]y directing the subpoenas to the corporations, the government must be satisfied with production by any representative of the corporations; strictly speaking, the proceedings are between the government and the corporation." *Id.* at 46.

Indeed, to reach any other result would allow the rare exception in *Lang* to swallow the general rule enunciated in *Bellis.* While the *Lang* court found that, in limited circumstances, an individual personally compelled to produce corporate documents in a representative capacity might claim the Fifth Amendment privilege, the Court firmly held that this did not relieve the corporation itself of its duty to comply with the summons. Once again the court approvingly cited the approach adopted by the Second Circuit, noting that even where a corporate representative was entitled to claim a privilege, the corporation itself was ordered "to comply with the summons by producing *someone*—any knowledgeable employee, or even a new agent—to testify about the records." 792 F.2d at 1240 (emphasis in original). Similarly, in this case, the Court cannot permit the corporation's president, as a self-appointed custodian, to assert that he is the *only* person capable of complying with the subpoena. The corporation's obligation is unimpeded; if it chooses to excuse the president from assisting in producing the requested documents *"someone*—any knowledgeable employee, or even a new agent" must carry out the task. *Id.*

---

**6.** The president of the corporation in this case also seeks to assert a Fifth Amendment privilege as to the contents of those subpoenaed documents kept pursuant to FDA regulations and the consent decree of November, 1985. *See* 21 C.F.R. Part 211, Subparts J and K. While documents maintained pursuant to a consent decree, voluntarily entered into by the parties, can hardly be considered compelled, documents kept pursuant to federal regulations may be so considered.

Here, however, as with the act of production discussed above, the element of personal compulsion against the corporation's president is missing. Responsibility for compliance with FDA regulations lies with the corporation. In addition, the corporation has presented no evidence suggesting that any of the subpoenaed records kept in order to comply with FDA regulations were actually authored or prepared by the corporation's president. Indeed, the record indicates that the bulk of these documents were prepared by the corporation's quality control and manufacturing personnel. To paraphrase the Supreme Court in *Fisher;* agent or not, a quality control or manufacturing employee is not the corporation president.

Given this lack of personal compulsion, we need not consider whether these particular records fall within the "required records" exception to the Fifth Amendment or whether, as the corporation contends, this exception was abandoned by the Supreme Court in *Fisher* and *Doe.* It should be noted, however, that the Circuits which have considered the interplay between these cases and the required records exception have affirmed the continuing validity of that exception. *See, Doe & Roe v. United States,* 801 F.2d 1164 (9th Cir.1986); *In Re Grand Jury Subpoena Duces Tecum (Underhill),* 781 F.2d 64 (6th Cir.1986).