UNITED STATES of America, et al., Petitioners,

v.

Hallison YOUNG, Respondent.

and

UNITED STATES of America, et al., Petitioners,

v.

PATMON, YOUNG & KIRK, P.C., Respondent.

Civ. A. Nos. 80–74869, 80–74872.

United States District Court, E. D. Michigan, S. D.

Nov. 30, 1981.

Mark Werder, Asst. U. S. Atty., Detroit, Mich., for petitioners.

Fredrick Patmon, Ullysses, Detroit, Mich., for respondents.

MEMORANDUM OPINION AND ORDER IMPOSING SANCTIONS FOR CONTEMPT

PATRICIA J. BOYLE, District Judge.

By order dated August 24, 1981, this Court found Respondents, Hallison Young; Hallison Young as a responsible officer of the law firm of Patmon, Young & Kirk, P.C.; and Patmon, Young & Kirk, P.C., in civil contempt for failure to comply substantially with the orders of this Court enforcing summonses issued to the respective parties. Thereafter Respondents appeared and gave further testimony and presented further documentation in purge proceedings. Hallison Young, having orally moved for a finding that his individual contempt has been purged and the Government having interposed no objection, the two issues presently before the Court are (1) whether the contempt of Mr. Young in his representative capacity of the company has been purged and (2) whether the contempt of the firm has been purged.

Since December of 1980, Petitioner has been seeking enforcement of administrative summonses which essentially seek information explaining the fact that Mr. Young, a partner in Patmon, Young & Kirk, reported no wage income on his 1976 and 1977 tax returns, while reporting interest income from the firm of Thirty-Two Thousand Thirty-One Dollars ($32,031) in 1976 and Nineteen Thousand Five Hundred Thirty-Three Dollars ($19,533) in 1977.

The purge proceedings consist of additional testimony of Mr. Young in his representative capacity, testimony of an associ-

ate attorney with the firm, and testimony of the firm's accountant. Despite an earlier representation that Respondents would produce Patmon, Young & Kirk's office manager, Jean Bronson, and my later expression of interest in her testimony, given that the accountant had described Ms. Bronson's role in the preparation of hitherto undisclosed documents, Ms. Bronson was not produced.

For the reasons which follow, I conclude that the remaining Respondents have failed to purge themselves of contempt and, accordingly, that sanctions for such failure must now be imposed.

The history of the matter may be fairly summarized as follows:

1. Mr. Young testified in both the enforcement proceedings and the purge proceedings that he is personally unable to produce personal records supporting his deductions as his personal bank statements and cancelled checks have been lost.

2. Mr. Young testified in the enforcement proceedings that his interest income declaration was taken from the 1099s issued by the corporation and that he kept no records on salary or wages received because he did not receive salary or wages.

3. Mr. Young testified in the enforcement proceedings that as Treasurer and a responsible officer of Patmon, Young & Kirk and a trained accountant he had personal knowledge of the type of books and records and the accounting method maintained by the corporation in 1976 (Tr. 26) and 1977 and that there were no records showing wages or salary paid (Tr. 30), that interest was paid by check and in cash, that he was unable to locate cancelled corporate checks (Tr. 31) or cash receipts, and that the firm kept no record at the time disbursement was made (Tr. 44, 69) nor any other record (Tr. 74, 75). He testified that no record of accrued salary or interest was kept other than the schedule of interest payable, which was produced. The cancelled checks and cash receipts which were kept had allegedly been lost.

4. Following the contempt finding, Mr. Young, on cross-examination, acknowledged the existence of some kind of check register, and Mr. Kenneth Doshi (the firm's accountant) testified to the existence of other records pertaining to payments to Mr. Young. Respondents then took the position that these records also had been lost in the firm's move to a new office and/or are outside the perimeters of the summonses previously enforced.

5. Finally, while Respondents claimed they have searched Riverside storage for the "missing" corporate records, they produced no documentary or testimonial evidence validating their visits to Riverside.

■ Respondents have the burden of coming forward with documentation which substantially complies with the summonses issued to them or to show by categorical and detailed evidence that they are unable to comply. *United States v. Rylander*, 656 F.2d 1313, 1318–19 (9th Cir. 1981).

Although Mr. Young denied the existence of records other than cancelled checks or cash disbursement receipts in the initial proceeding, Mr. Kenneth Doshi's testimony establishes that substantial other documents were generated reflecting payments to Mr. Young.

The accounting method described by Mr. Doshi establishes that the firm maintains a check register (a fact acknowledged by Mr. Young on cross-examination in the purge proceeding) as a cash disbursements journal. Each check register/cash disbursement journal page is a two-sided, five-page fold-out accounting paper with twenty-eight columns for spreading disbursements to relevant accounts directly from the check entry. All information entered on each check is "spread" by Mr. Doshi to various columns and transferred to the corresponding accounts, including interest expense. A reference notation "CD" on the corresponding account ledger pages indicates that the source of the entry is the cash disbursements journal. (Tr. September 9, 1981, pp. 27–31; September 11, 1981, pp. 9–10.)

Additional records regarding payments made in cash were kept. Disbursements in cash made directly from cash income which

was not deposited were recorded in daily cash receipts and a monthly cash summary was prepared by Ms. Bronson. The cash receipts summary and cash receipts were attached to each other and filed on a monthly basis. (Tr. September 11, 1981, p. 8.)

An accounting schedule was prepared annually for Mr. Young showing all disbursements, whether in check or cash, by date and type of payment (interest, travel expense, etc.).

Composite Exhibit 3 comprises excerpts from a general ledger, which is a sequential summary of postings made from the check register (or cash disbursements journal). Mr. Doshi testified that the ledger had not been posted for 1977 but the 1976 interest expense entries included interest payments to Mr. Young and interest workpapers would be referenced to determine which entries actually reflected payments to Mr. Young. Mr. Doshi testified that 1977 interest payments (and all other accounts in which there was activity) are either recorded in a separate journal or are still on summary sheets. (Tr. September 9, 1981, pp. 10–14.)

Contrary to Mr. Young's earlier testimony that the 1099s were prepared by the accountant from cancelled checks and cash receipts, Mr. Doshi testified they were prepared from a schedule summarizing disbursements to Mr. Young and that accounting workpapers, schedules, and summaries were prepared in the firm's offices and were filed there. (Tr. September 9, 1981, pp. 34, 36, 50.)

Fairly summarized, Mr. Doshi's testimony establishes that the firm maintained an accounting system much different from that described by Mr. Young in the enforcement proceedings and that workpapers, schedules, summaries, and other data reflecting payments to Mr. Young were generated. Respondents' submissions totally fail to account for these omissions from Mr. Young's testimony in the enforcement proceedings. Rather Respondents now claim that despite "diligent searches" of their offices and Riverside storage the records cannot be located and that certain of the records are beyond the scope of the summonses and the Court's enforcement order.

Respondents' claim that the referenced records are beyond the scope of the summonses and order is not tenable. The clear language of the summonses enforced called for "all books, records and papers containing information relative to interest *and all other payments*" [made to Young].

Nor do Respondents' oft repeated assertions that they have made several searches meet their burden to come forward with categorical and detailed evidence substantiating their claim of inability to comply. No documentary corroboration of visits to Riverside storage has been offered (although it is apparently available) nor was the testimony of Ms. Bronson offered, although a witness testified Ms. Bronson made such a search.

For almost one year Respondents have frustrated the summonses which this Court, after protracted summary proceedings, ordered enforced on August 24, 1981. At no time has Mr. Young, as a responsible officer of Patmon, Young & Kirk, an accountant, and a tax attorney, offered an explanation for his failure to disclose the existence of documentation which it is now established existed.

Respondents' claim as to the expense reports of Mr. Young finally produced on September 8, 1981, (of which no prior mention had been made) is typical of the course of conduct maintained throughout these proceedings. Respondents claim that these reports represent not payments but rather monies due Mr. Young by the law firm or payable by Mr. Young to the law firm. The receipts, Respondents contend, represent payment only to the extent Mr. Young was actually reimbursed by check, the checks are lost, therefore these reports do not reflect "payments."

■ Although the scope of records encompassed in Respondents' present position has necessarily been expanded by the Doshi testimony, Respondents' claim remains the same, either the records do not exist or, if

they existed, they are lost. Respondents have not complied substantially with the summonses and have failed to purge themselves of the contempt order of this Court. *United States v. Rylander*, 656 F.2d 1313 (9th Cir. 1981).

Accordingly, IT IS HEREBY ORDERED that Respondent Hallison Young, responsible officer of Patmon, Young & Kirk, submit himself to the custody of the United States Marshal unless he purges himself either by complying with the summons enforcement order or by producing categorical and detailed evidence regarding his inability to comply with the order of this Court. IT IS FURTHER ORDERED that Respondent Patmon, Young & Kirk, P.C., shall pay within seventy-two (72) hours to the Clerk of the Court, for the use and benefit of the United States Government, the sum of Five Hundred Dollars ($500) per day for each day from the expiration of the 48-hour purge period afforded the law firm by the contempt order of August 24, 1981, to the date of completion of the purge proceedings. September 11, 1981 [for a total of sixteen (16) days, or Eight Thousand Dollars ($8,000)], and an additional sum of Five Hundred Dollars ($500) per day for each day from the date of entry of this order until they shall purge themselves in like terms.

Should Respondent Young elect to commence purge proceedings, he is directed to make arrangements forthwith with Petitioner.

Should Respondent Young elect not to do so, he is directed to submit himself to the custody of the United States Marshal within seventy-two (72) hours of the hour of entry of this Order.

IT IS SO ORDERED.