745 F.2d 184
 84-2 USTC P 9828
 UNITED STATES of America and Philip J. Kennedy, Special
Agent, Internal Revenue Service, Petitioners-Appellees,
v.
Leslie R. BARTH; Leslie R. Barth Associates, P.C., a/k/a
Barth & Richheimer, P.C., Leslie R. Barth Organization,
Inc., Southeastern Realty Associates, Inc., North American
Investment Resources, Inc., and Bismark Realty Consultants,
Inc., Respondents-Appellants.
 No. 1443, Docket 84-6131.
 United States Court of Appeals,
Second Circuit.
 Argued June 12, 1984.
Decided Oct. 1, 1984.
 
 Sheldon H. Elsen, New York City (Lisa Feiner, Lawrence Solan, Orans, Elsen & Lupert, New York City, of counsel), for respondents-appellants.
 William A. Whitledge, Atty., Tax Div., Dept. of Justice, Washington, D.C. (Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, David I. Pincus, Attys., Tax Div., Dept. of Justice, Washington, D.C., Alan H. Nevas, U.S. Atty., Bridgeport, Conn., of counsel), for petitioners-appellees.
 Before VAN GRAAFEILAND, WINTER and PRATT, Circuit Judges.
 GEORGE C. PRATT, Circuit Judge.
 
 
 1
 Respondents, Leslie R. Barth and five corporations of which he is president, appeal from an order of the United States District Court for the District of Connecticut, Jose A. Cabranes, Judge, enforcing five Internal Revenue Service (IRS) summonses pursuant to 26 U.S.C. Sec. 7604(b) (1982). We reverse in part and affirm in part.
 
 I.
 
 2
 During the course of an investigation of Barth's alleged failure to file corporate and personal federal income tax returns for the years 1976 through 1980, the IRS served five administrative summonses on Barth individually and in his capacity as president of the five respondent corporations. The summonses directed Barth and the corporations to turn over described corporate records, as well as copies of each corporation's state and federal income tax returns. Although Barth gave many of the corporate records to the IRS, the government considered Barth's compliance incomplete and petitioned the district court in August 1982 for an order enforcing the summonses pursuant to 26 U.S.C. Sec. 7604(b).
 
 
 3
 Barth's partial compliance left two unresolved issues which were the subject of several proceedings before the district court, and which ultimately were addressed in the enforcement order appealed from. Those issues were: (1) whether the court should order Barth to turn over copies of the corporate income tax returns; and (2) whether the court should order the corporations to provide a witness who could testify about the corporate records.
 
 As to Barth, the district court ordered:
 
 4
 Barth shall either produce the summoned corporate tax returns or testify under oath before this court that he did not possess them on the date of the summons, or at any time thereafter, * * * *. (Emphasis added).
 
 
 5
 As to the corporations, the district court ordered:
 
 
 6
 [R]espondent corporations shall designate, and if necessary, shall appoint, an agent or agents who shall, having made such inquiry as is necessary in the circumstances, appear in person * * * to testify for the corporations in response to the summonses, without invoking their personal privileges against self-incrimination, and shall furnish such information as is available to the corporations. (Emphasis added).
 
 
 7
 Judge Cabranes denied a motion to stay the enforcement order, but we stayed the district court's order pending argument and resolution of this appeal.
 
 II.
 
 8
 Section 7602 of the Internal Revenue Code authorizes the IRS to examine records, to issue summonses, and to take testimony for the purpose of "determining the liability of any person for any internal revenue tax." 26 U.S.C. Sec. 7602(a); United States v. Euge, 444 U.S. 707, 710-11, 100 S.Ct. 874, 878-79, 63 L.Ed.2d 141 (1980). Before the district court may enforce an IRS summons the government must demonstrate: (1) that the summons was issued for a proper purpose; (2) that the material sought is relevant to that purpose; (3) that the information sought is not already within the commissioner's possession; and (4) that all administrative steps have been followed. United States v. Powell, 379 U.S. 48, 57-58, 85 S.Ct. 248, 254-55, 13 L.Ed.2d 112 (1964). Once the government establishes these four factors the burden in an enforcement proceeding shifts to the party challenging the summons to show why it should not be enforced. United States v. Davey, 543 F.2d 996, 1000 (2d Cir.1976).
 
 
 9
 In the case at bar, respondents do not challenge the Powell showing made by the government. Instead, respondents attack the scope of the enforcement order, claiming that it went beyond mere enforcement of the IRS summonses. Under the order, Barth's only alternative to producing the corporate income tax returns was to testify, under oath, that he did not possess the returns. Barth contends this violates his fifth amendment privilege against self-incrimination. Similarly, the order required more of the corporations than production of documents; it directed them to designate or appoint an agent, who would not invoke a fifth amendment privilege, to testify about the corporate records.
 
 A. BARTH
 
 10
 Reversing the position it took in the district court, the government has acknowledged on appeal that we must vacate that part of the enforcement order that requires Barth to testify. Barth is being investigated for failure to file individual and corporate federal income tax returns. An admission that he did not possess these returns would "furnish a link in the chain of evidence needed to prosecute [Barth] for a federal crime", Hoffman v. United States, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951), and therefore, would be potentially self-incriminating. Accordingly, under Curcio v. United States, 354 U.S. 118, 123-28, 77 S.Ct. 1145, 1149-51, 1 L.Ed.2d 1225 (1957), Barth's testimony that he did not possess the returns could not constitutionally be compelled, and we must vacate that portion of the order that directs him to testify. See United States v. Rylander, 460 U.S. 752, 760-61, 103 S.Ct. 1548, 1554, 75 L.Ed.2d 521 (1983); see also United States v. Edgerton, 734 F.2d 913, 920-21 (2d Cir.1984).
 
 
 11
 Barth further argues that we must vacate that portion of the order directing him to produce the corporate tax returns since he does not possess them and is therefore unable to comply. The government responds that after striking the alternative direction to testify we should affirm the district court's order as modified, because Barth failed to establish his nonpossession defense below. According to Barth, the corporations have admitted through answers to interrogatories that no returns of the corporations were filed, and the government's records show that no such returns were received. This circumstantial evidence, he urges, establishes that no returns existed and, therefore, that he could not possibly possess them.
 
 
 12
 If properly established, nonpossession of summoned documents is a valid defense to an IRS application for an enforcement order. United States v. Rylander, 460 U.S. at 757, 103 S.Ct. at 1552. Issuance of an enforcement order constitutes an adjudication that the respondent possesses and is able to produce the summoned documents at the time the order is issued. Thereafter, the respondent must produce the documents or face contempt proceedings in which he is foreclosed from claiming nonpossession at the time of the enforcement order. Id. at 1554. Because of its potentially drastic consequences, however, an enforcement order in a contested proceeding should not rest on a determination of possession that is merely implicit. Before ordering production on penalty of contempt, the district court should expressly determine that the respondent possesses the summoned documents.
 
 
 13
 Here, the district court made no finding of possession. Instead, it issued an alternative order--produce the documents or testify that you do not possess them--that was apparently designed to defer determination of the critical contested issue of possession. Such an alternative procedure is not contemplated by the statute as interpreted in Rylander. Moreover, to merely delete the direction to testify, as the government urges, and thereby leave standing an order to produce containing an implicit finding of possession, would in effect deprive Barth of a proper ruling on the possession issue. On the other hand, the issue of possession, on which Barth bears the burden of proof, is too complex and fact-sensitive for resolution by an appellate court on the simplistic analysis tendered by Barth.
 
 
 14
 We therefore vacate that part of the enforcement order directed to Barth and remand the proceeding to enable Judge Cabranes to rule explicitly on Barth's defense of nonpossession based on the present record and on any additional relevant evidence the parties may wish to present. If Judge Cabranes finds that Barth possesses the returns, then enforcement may be granted; if he determines that Barth does not possess them, then enforcement should be denied.
 
 B. THE CORPORATIONS
 
 15
 After the government filed its petition for enforcement, Barth, who was president of each corporation, refused on self-incrimination grounds to testify about what corporate books were kept or who was responsible for keeping them. Barth's attorney did agree, however, to furnish the government with a list of employees who had knowledge about the records.
 
 
 16
 Nevertheless, after that list was furnished, the listed employees appeared by counsel who informed the government and the court that each employee intended to invoke his personal privilege against self-incrimination in response to any question asked about the corporate records. At the court's suggestion, government counsel agreed that it would accept an affidavit supplied by the employees' counsel showing: (1) that he had interviewed each employee; (2) that each had a reasonable fear of incrimination; and (3) that each employee intended to assert the privilege.
 
 
 17
 But when counsel for the employees furnished the affidavit, it stated only that he had interviewed the employees and that each employee intended to assert the fifth amendment privilege. It did not state that their fears of self-incrimination were reasonable, nor did it supply any facts to show that the claims of privilege were valid.
 
 
 18
 At this point, government counsel argued that the affidavit was inadequate to support each employee's claim of the fifth amendment privilege and that even if the affidavit were sufficient to excuse all the employees from testifying, the corporations still could not escape their duty to comply with the summonses. As a potential solution, the government suggested that the corporations be required to appoint an agent, free of self-incrimination problems, who could testify about the corporate records.
 
 
 19
 Judge Cabranes finally ordered that the corporations
 
 
 20
 shall designate, and if necessary, shall appoint, an agent or agents * * * to testify for the corporations * * * without invoking their personal privileges against self-incrimination * * *.
 
 
 21
 On appeal from this part of the enforcement order the corporations argue that the court lacked authority: (1) to order the corporations to force a current employee to give up a valid claim of the fifth amendment privilege against self-incrimination, United States v. Hankins, 565 F.2d 1344, 1350 (5th Cir.1978), cert. denied, 440 U.S. 909, 99 S.Ct. 1218, 59 L.Ed.2d 457 (1979); and (2) to force the corporations to appoint a new employee to testify on behalf of the corporations.
 
 
 22
 The corporations' first challenge fails because it rests on the assumption that the district court found that the affidavit filed by the employees' counsel was sufficient to support their assertion of the fifth amendment privilege. Our reading of the transcript of the December 1983 hearing on this issue and of the district court's subsequent written order discloses that Judge Cabranes did not find that counsel's affidavit was sufficient to establish the employees' claims of privilege. Had he done so he would not have ordered the corporations to either designate an existing agent or to appoint a new agent to testify.
 
 
 23
 Furthermore, Judge Cabranes's order does not directly affect the employees, nor does it force them to surrender what may be valid fifth amendment claims. As we interpret the order, it simply directs the corporation to comply with the summonses by producing someone to testify about records, all, or nearly all, of which have already been produced. From the proceedings before Judge Cabranes, it appears that the "someone" could be any knowledgeable employee, or alternatively, a new agent appointed by the corporations for the purpose. The basic obligation of the corporations is to make every reasonable effort to obey the summonses. See United States v. Euge, 444 U.S. at 712-13, 100 S.Ct. at 878-79. If corporate employees do appear before the court in response to a request or direction by their employer, they still would have their personal privileges against self-incrimination which, if asserted, can be tested for validity at that time.
 
 
 24
 We also reject the corporations' second claim that the alternative direction to appoint a new agent exceeded the court's authority. Unlike a corporation's individual officers and employees, a corporation itself possesses no fifth amendment privilege. Curcio v. United States, 354 U.S. at 122, 77 S.Ct. at 1148. Because of its continuing duty to respond to an IRS summons, a corporation may be required to supply a new agent should all existing employees refuse to testify on self-incrimination grounds. Cf. United States v. Kordel, 397 U.S. 1, 8-9, 90 S.Ct. 763, 767-68, 25 L.Ed.2d 1 (1970). Despite the corporations' claim that the procedure was not feasible, it appears to be the only way in which the corporations might satisfy their obligation to testify should all of their employees successfully assert their fifth amendment privileges.
 
 
 25
 Respondents' reliance upon United States v. Hankins, 565 F.2d at 1350, is misplaced. There, the fifth circuit reversed an order directing the president of a corporation to designate an employee to give testimony without invoking a fifth amendment privilege. The fifth circuit stated that it did not know how the president could compel the attendance of a witness nor did it see how the constitution would allow him to speak for the strictly personal right of any individual to claim the privileges of the fifth amendment.
 
 
 26
 In the case at bar, these problems are easily resolved. First, the corporations could have subpoenaed the employees to testify in the enforcement proceeding in support of the corporations' defense. Even though they did not do that, the corporations could still request their employees to serve as witnesses as part of their duties. If the employees refuse, the alternative order permits the corporations to appoint an agent solely for the purpose of reviewing the company records and testifying about them. It makes little sense to argue that the corporations could not compel the agent's attendance when that would be the essence of his job responsibilities.
 
 
 27
 Second, the order does not seek to have Barth or the corporations waive any personal privileges of either existing employees or of an agent appointed pursuant to the order. Whether the privilege is asserted is still left to the employee and whether it will be upheld is left for future determination by the court. If all current employees successfully assert a fifth amendment privilege, the corporations must appoint an agent who will testify without asserting the privilege. But this does not contemplate a waiver of fifth amendment rights. All it requires is that they appoint someone who has no previous connection with the corporations which might place him in a position where his testimony about the records could result in self-incriminating statements.
 
 
 28
 Finally, we cannot accept the fifth circuit's suggestion in Hankins that since the IRS has the resources to individually subpoena a corporation's employees, it is somehow improper to place the burden on the corporation to come forward with an employee or agent who can supply the requisite information. To the contrary, we regard this as part of a corporation's continuing duty to respond to an IRS summons.
 
 
 29
 It is possible that after reasonable, bona fide efforts the corporations might be unable to supply either an employee or an agent willing and able to provide the necessary information. If so, the court may weigh the intensity of the corporations' efforts along with other relevant circumstances in any subsequent contempt proceeding.
 
 
 30
 As demonstrated by the history of this particular proceeding, there is no natural division between an IRS enforcement proceeding and a contempt proceeding. Some issues raised in opposition to an IRS summons, like abuse of process, or nonpossession of documents, are best raised at the enforcement stage. See, e.g., United States v. O'Henry's Film Works, Inc., 598 F.2d 313, 319-20 (2d Cir.1979) (abuse of process); United States v. Rylander, 460 U.S. at 756-57, 103 S.Ct. at 1552 (nonpossession). Still others, like substantial compliance, or present inability to comply, are particularly suited to the contempt stage. See United States v. Young, 532 F.Supp. 334, 335 (E.D.Mich.1981), modified, 718 F.2d 1101 (6th Cir.1983), cert. denied, --- U.S. ----, 104 S.Ct. 1678, 80 L.Ed.2d 153 (1984) (substantial compliance); United States v. Rylander, 460 U.S. at 761, 103 S.Ct. at 1554 (present inability to comply).
 
 
 31
 However, some issues resist categorization and could properly be raised at either stage. We believe that the district court possesses broad discretion to determine when these issues should be addressed. In the order appealed from, Judge Cabranes has elected to defer to a later time a determination of whether there are any knowledgeable employees who will testify without asserting their privilege against self-incrimination, and whether under the circumstances it is feasible to supply the corporations' testimony through a newly appointed agent. While some or perhaps all of these issues might have been resolved by the enforcement order, we find no error in the procedure adopted and therefore affirm the order as to the corporations.
 
 III.
 
 32
 That part of the order appealed from that is directed to Barth is reversed and remanded for further proceedings in accordance with this opinion. That part of the order appealed from that is directed to the corporations is affirmed.