**In re GRAND JURY SUBPOENA DUCES TECUM,**

**Appeal of Howard ACKERMAN.**

No. 86–8388
Non-Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

July 14, 1986.

Joel Hirschhorn, Miami, Fla., for petitioner-appellant.

Gail McKenzie, Asst. U.S. Atty., Atlanta, Ga., Joel M. Gershowitz, U.S. Dept. of Justice, Washington, D.C., for U.S.

Before TJOFLAT, VANCE and KRAVITCH, Circuit Judges.

Corrected Opinion

KRAVITCH, Circuit Judge:

At issue in this appeal is whether *United States v. Doe*, 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984), permits an individual to assert the fifth amendment privilege against self incrimination to resist a grand jury subpoena duces tecum ordering the production of corporate records held in a representative capacity. Although several courts of appeal have decided this issue, it is one of first impression in this circuit.[1] We conclude that *Doe* in no way undermines the principle, established in a long line of Supreme Court cases, that the fifth amendment does not protect against the compelled production of documents of a collective entity held in a representative capacity. We therefore uphold the order of the district court finding appellant Howard Ackerman in contempt of court for refusing to produce corporate documents subpoenaed by a grand jury.

This controversy arises from an investigation by a federal grand jury into the alleged purchase and sale of pharmaceuticals that have been diverted from manufacturers' representatives, charities, nonprofit organizations, and hospitals, or that have been mislabeled or adulterated. Among the targets of the investigation are appellant Howard Ackerman and his brother, Stanley Ackerman. The Ackermans are officers and the sole shareholders of S & A Drugs and Sundries, Inc. ("S & A"). On July 15, 1985, the grand jury issued a subpoena duces tecum directing S & S's custodian of records to produce various corporate documents. Although the subpoena was served on Howard Ackerman as custodian of S & A's records, the subpoena was not addressed specifically to any individual, and government attorneys advised counsel for S & A that production of the documents could be by S & A's bookkeeper or another employee.

After complying with portions of the subpoena, Howard Ackerman moved to quash other portions on grounds that compliance would violate his fifth amendment privilege against compulsory self-incrimination. The district judge denied the motion, and Ackerman subsequently appeared before the grand jury. Claiming the fifth amendment privilege, he refused to produce the subpoenaed documents. The district judge found Ackerman in contempt of court and ordered him held in confinement but stayed sanctions pending appeal to this court.

Ackerman's assertion of a fifth amendment privilege against production of the subpoenaed documents is based on *Doe v. United States, supra,* in which the Supreme Court held that the fifth amendment protects a sole proprietor from producing subpoenaed business records where the act of production would result in testimonial self-incrimination. Ackerman contends that compliance with the challenged portions of the subpoena would, as in *Doe,* constitute self-incriminating testimony by its tacit acknowledgment of the existence and authenticity of records containing evidence of criminal activity. He claims the privilege in his own behalf, not that of the company.

Ackerman's reliance on *Doe* is, however, unavailing. For Ackerman successfully to assert his fifth amendment privilege against compulsory self-incrimination, *Doe* must be read to implicitly reject the long-established principle that "an individual cannot rely upon the privilege to avoid producing the records of a collective entity which are in his possession in a representative capacity, even if these records might incriminate him personally." *Bellis v. United States,* 417 U.S. 85, 88, 94 S.Ct. 2179, 2183, 40 L.Ed.2d 678, 683 (1974). Yet *Doe* in no way intimates that such an interpretation is warranted. The Court explicitly limited the issue addressed in *Doe* to the extent to which "the Fifth Amendment privilege against compulsory self-incrimination ap-

---

**1.** *In re Grand Jury Subpoena (Roberts),* 754 F.2d 918 (11th Cir.1985), did not consider the issue of records held in a representative capacity.

plies to the business records of a *sole proprietor.*" 104 S.Ct. at 1239 (emphasis added). The Court's analysis of that issue was, moreover, largely dependent on the determination by the court of appeals that a sole proprietor "acts in a personal rather than a representative capacity." *Id.* at 1240. In concluding in *Doe* that the act of producing the subpoenaed documents had a testimonial component justifying fifth amendment protection, the Court was concerned only with an individual's assertion of his own fifth amendment privilege to resist production of his own personal records. The Court gave no indication that the decision would in any way affect the very different situation, presented here, of an assertion of a fifth amendment privilege against an order to produce documents of a collective entity.

Ackerman contends, however, that *Doe* requires that representatives of collective entities be permitted to withhold subpoenaed documents when the representatives would be incriminated by the act of production. He notes that the production-as-testimony doctrine relied upon in *Doe* has developed since the Court's most recent reassertion in *Bellis, supra,* that individuals cannot assert their own privilege against compulsory self-incrimination to resist production of documents held as a representative of a collective entity. He emphasizes that *Bellis* and previous collective-entity cases were concerned with the compulsory incrimination of representatives by the contents of corporate documents. Thus, he argues, the rule established in those cases does not survive the recognition by the Supreme Court in *Doe* that the *act* of producing documents—not merely their contents—may constitute the compelled testimonial self-incrimination prohibited by the fifth amendment.

Ackerman's argument is fatally flawed in several respects. First, *Fisher v. United States,* the case in which the Supreme Court first recognized the production-as-testimony doctrine of *Doe,* explicitly referred to the continued validity of the collective-entity doctrine relied upon in *Bellis.*

*Fisher,* 425 U.S. 391, 411, 96 S.Ct. 1569, 1581, 48 L.Ed.2d 39, 56 (1976). Similarly, in *Doe,* the court noted without a hint of disapproval the application by the court of appeals of the standards outlined in *Bellis.*

More significantly, Ackerman's argument fails to address the principal logical basis for the collective-entity doctrine of *Bellis.* That doctrine is concerned with the absurdity that would result should individuals be able to claim their own fifth amendment privilege to shield from government purview the documents of a collective entity. As the Supreme Court explained in *Bellis:*

> In view of the inescapable fact that an artificial entity can only act to produce its records through its individual officers or agents, recognition of the individual's claim of privilege with respect to the financial records of the organization would substantially undermine the unchallenged rule that the organization itself is not entitled to claim any Fifth Amendment privilege, and largely frustrate legitimate governmental regulation of such organizations.

417 U.S. at 90, 94 S.Ct. at 2184, 40 L.Ed.2d at 685.

The facts of this case forcefully demonstrate the advisability of the collective-entity doctrine. Because Ackerman might be incriminated personally by production of the documents of S & A, he is attempting as their custodian to withhold the documents from the grand jury even though he is neither named personally by the subpoena nor required to produce the documents himself. If Ackerman were to succeed in his claim, corporations and other collective entities could effectively shield documents from governmental inspection by naming as custodian the individual most likely to be incriminated by the act of their production. Grand juries and other governmental actors would then be forced to choose between granting immunity to the custodian or foregoing access to the documents. Such a result is supported neither by the law nor by logic.

In concluding that *Doe* does not alter the collective-entity doctrine of *Bellis*, we are in accord with the majority of the federal courts of appeals that have decided this issue. *See In re Grand Jury Subpoena,* 784 F.2d 857 (8th Cir.1986); *In re Grand Jury Proceedings (Morganstern),* 771 F.2d 143 (6th Cir.) (en banc), *cert. denied,* — U.S. ——, 106 S.Ct. 594, 88 L.Ed.2d 574 (1985); *In re Grand Jury Subpoena (Lincoln),* 767 F.2d 1130 (5th Cir.1985); *cf. United States v. Lang,* 792 F.2d 1235 (4th Cir.1986) (privilege unavailable except in "limited circumstances"); *In re Two Grand Jury Subpoenas Duces Tecum,* 769 F.2d 52 (2d Cir.1985) (same). Ackerman, however, has relied extensively on *In re Grand Jury Matter (Brown),* 768 F.2d 525 (1985) (en banc), the only case that has been decided differently. While we disagree with the reasoning of the majority opinion in that case, we note that *Brown* was factually distinguishable from the one presented here. Here Ackerman is plainly acting in a representative capacity as custodian of S & A's documents;[2] the individual subpoenaed in *Brown* was an accountant who had incorporated his one-man practice. Whether an individual operating under such a business structure would be considered as holding documents in a personal or a representative capacity we need not now decide.

Because we conclude that an individual may not claim the fifth amendment privilege against compulsory self-incrimination to withhold documents of a collective entity held in a representative capacity, the order of the district court finding Howard Ackerman in contempt of court for refusing to produce the records of S & A in compliance with a grand jury subpoena duces tecum is AFFIRMED.

**2.** The district court did not make an explicit finding that Ackerman held the records in a representative capacity. However, the record indicates that such a conclusion is unavoidable: Ackerman was not the sole stockholder of S & A, *cf. Bellis, supra* (three-partner law firm); the company had several employees and former employees, including some qualified to produce the documents before the grand jury; the subpoena was addressed to the "Custodian of Records" of S & A rather than to Ackerman as an individual; the government attorneys informed Ackerman that he need not produce the documents personally; the challenged portions of the subpoena did not request documents that Ackerman would himself necessarily have created, *cf. Brown,* 768 F.2d at 531 (Becker, J., concurring).