**In re GRAND JURY NO. 86–3 (WILL ROBERTS CORPORATION),**
**Appellant.**

**No. 87–8191**
**Non-Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

April 20, 1987.

Williams & Connolly, Steven M. Umin, Christopher B. Mead, Washington, D.C., for appellant.

Martha P. Rogers, Atty., Crim. Section, Tax Div., U.S. Dept. of Justice, Roger M. Oslen, Asst. Atty. Gen., Dept. of Justice, Michael L. Paup, Chief, Appellate Section, Robert E. Lindsay, Alan Hechtkopf, Washington, D.C., for appellee.

Before FAY, ANDERSON and EDMONDSON, Circuit Judges.

PER CURIAM:

In this expedited appeal, we must decide whether the sole shareholder in a now-defunct, one-man corporation may raise a fifth amendment personal privilege against the act of producing documents of the corporation that have been subpoenaed by a grand jury. This question is one of first impression in our circuit. *See In re Grand Jury Subpoena Duces Tecum (Ackerman)*, 795 F.2d 904, 907 (11th Cir. 1986). We hold that, although, in certain instances, an individual acting as record custodian can assert his personal privilege to avoid having to produce the documents himself, no situation exists in which the corporation is prevented from producing corporate records. That is, in the rare situation where producing the documents would violate the individual's fifth amendment rights, the corporation nevertheless must produce the documents via some other agent; failure to appoint such an agent is a proper ground to hold the corporation in contempt. We therefore affirm the district court's order holding Roberts in contempt.

Appellant Will Roberts was the president and sole shareholder of the now-defunct Will Roberts Corporation. In November,

1986 a grand jury sitting in the United States District Court for the Northern District of Georgia issued a subpoena to "The Will Roberts Corporation, Will Roberts, President and/or Custodian of Records." The subpoena called for records relating to certain checks. Roberts refused to produce the documents, claiming that the act of production was testimonial and would violate the fifth amendment, which provides that "no person ... shall be compelled in any criminal case to be a witness against himself." The district court disagreed, found Roberts in contempt and sentenced him to jail. That sentence has been stayed pending this expedited appeal.

In essence, Roberts maintains that the owner of a one-shareholder corporation that functions as a one-man operation can assert the fifth amendment privilege because any act he takes—even turning the corporation's records over to a designated agent to search for the specifically subpoenaed records—requires an impermissibly testimonial and incriminating act of production. Thus, he contends that his decision to place his business affairs in a corporate form has no effect on whether he can prevent the production of the documents.

■ We disagree on two counts. First, the fifth amendment significance of the corporate form is too well-rooted in the law to warrant its dismissal on these facts. Second, and more important in the context of this case, we conclude that the act of implicitly acknowledging the existence and possession of corporate records by turning them over to a third party agent (who then determines which records are responsive to the subpoena's requests) is not sufficiently testimonial to trigger the privilege given the non-private nature of corporate records.[1]

The concept that a corporation cannot claim the fifth amendment privilege and that the corporation's human representatives therefore also cannot assert the privilege is a long-standing one that culminated

in *Bellis v. United States,* 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974). In *Bellis,* the Court emphasized that corporate records held in a representational capacity are not privileged; this rule applies "regardless of how small the corporation may be." *Id.* at 100, 94 S.Ct. at 2189. *Bellis,* though, involved only the *contents* of the records and did not address whether the *act* of producing the documents was privileged even though the records themselves were not. The Supreme Court earlier had held, however, that a corporate record custodian does not waive the personal privilege, as to oral testimony, by accepting his position. *Curcio v. United States,* 354 U.S. 118, 124–25, 77 S.Ct. 1145, 1150, 1 L.Ed.2d 1225 (1957).

Two subsequent Supreme Court cases did consider the "act of production" issue. In *Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976) and *United States v. Doe,* 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984), the Court emphasized that the mere act of producing documents whose contents were not privileged could be sufficiently testimonial and incriminating in nature to trigger the fifth amendment privilege. *Fisher* involved documents prepared by a taxpayer's accountant and *Doe* involved the records of a sole proprietorship.

While the Court's emphasis was on whether the act of production was testimonial and not on the form of the entity, neither *Fisher* nor *Doe* in any way expressed reservations about *Bellis* or its progenitors; nor did *Fisher* and *Doe* present the corporate-record-custodian situation. Nevertheless, recalcitrant corporate grand jury witnesses pressed the proposition that *Fisher* and *Doe* had substantially altered, if not overruled *sub silentio,* the collective entity doctrine set forth in *Bellis* and its progenitors. The result was a large amount of case law that has analyzed the question in an often inconsistent, and occa-

---

**1.** The subpoena in this case was addressed to "The Will Roberts Corporation, Will Roberts, President and/or Custodian of Records." We read this subpoena as running to the corporation and not to Will Roberts in his individual and personal capacity. *See In re Grand Jury 83–8 (MIA) Subpoena Duces Tecum,* 611 F.Supp. 16, 22 (S.D.Fla.1985). Thus, the government must accept compliance by anyone authorized by the corporation to comply.

sionally contradictory, manner. *See generally, In re Grand Jury Subpoena Duces Tecum (Ackerman)*, 795 F.2d 904 (11th Cir.1986); *United States v. Rogers Transp., Inc.*, 793 F.2d 557 (3d Cir.1986); *In re Grand Jury Subpoena (55–W–71–5)*, 784 F.2d 857 (8th Cir.), *cert. granted sub nom. See v. United States*, —— U.S. ——, 107 S.Ct. 59, 93 L.Ed.2d 18 (1986), *cert. dismissed*, —— U.S. ——, 107 S.Ct. 918, 93 L.Ed.2d 865 (1987); *In re Grand Jury Subpoenas Issued to Thirteen Corporations*, 775 F.2d 43 (2d Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 1459, 89 L.Ed.2d 716 (1986); *In re Grand Jury Proceedings (Morganstern)*, 771 F.2d 143 (6th Cir.) (en banc), *cert. denied*, —— U.S. ——, 106 S.Ct. 594, 88 L.Ed.2d 574 (1985); *In re Two Grand Jury Subpoenae Duces Tecum*, 769 F.2d 52 (2d Cir.1985); *In re Grand Jury Matter (Brown)*, 768 F.2d 525 (3d Cir.1985) (en banc); *In re Grand Jury Subpoena (Lincoln)*, 767 F.2d 1130 (5th Cir.1985); *In re Grand Jury Proceedings (Manges)*, 745 F.2d 1250 (9th Cir.1985); *In re Grand Jury Proceedings (Vargas)*, 727 F.2d 941 (10th Cir.), *cert. denied sub nom. Vargas v. United States*, 469 U.S. 819, 105 S.Ct. 90, 83 L.Ed.2d 37 (1984); *In re Grand Jury 83–8 (MIA) Subpoena Duces Tecum*, 611 F.Supp. 16 (S.D.Fla.1985).

Only one circuit court of appeals has addressed the exact question we face today. In *In re Grand Jury Matter (Brown)*, 768 F.2d 525 (3d Cir.1985) (en banc), the Third Circuit concluded that *Doe* and *Fisher* had altered *Bellis* to the point of effectively vitiating its analysis in the one-man corporation setting. The critical question, in the *Brown* court's view, is not

"the nature of the entity which owns the documents, nor the contents of the documents, but rather the communicative or noncommunicative nature of the arguably incriminating disclosures sought to be compelled." *Id.* at 528. The district court in the case *sub judice* expressly rejected this interpretation and instead found the *Brown* dissent more persuasive. *See id.* at 532–40 (Garth, J., dissenting). We also reject the *Brown* majority's analysis; we, however, find the concurrence's view in *Brown* most persuasive. *See id.* at 529–32 (Becker J., concurring); [2] *see also In re Grand Jury Subpoenas Issued to Thirteen Corporations*, 775 F.2d 43, 46 (2d Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 1459, 89 L.Ed.2d 716 (1986); *In re Two Grand Jury Subpoenae Duces Tecum*, 769 F.2d 52, 57 (2d Cir.1985); *In re Grand Jury Subpoena (Lincoln)*, 767 F.2d 1130, 1131 (5th Cir.1985); *In re Grand Jury 83–8 (MIA) Subpoena Duces Tecum*, 611 F.Supp. 16, 22–25 (S.D.Fla.1985).

We believe that the better reasoned analysis recognizes the vitality of the risk of production issue as expressed in *Fisher* and *Doe*, the collective entity doctrine as expressed in *Bellis* and it precursors, and the custodian's individual privilege rights as expressed in *Curcio*. That is, the custodian clearly retains his fifth amendment privilege and that privilege extends both to incriminating oral testimony (*Curcio*) and incriminating act of production testimony (*Fisher* and *Doe*); but, the incorporator's voluntary election to take on the corporate form carries with it an intrinsic awareness that the contents of corporate records are never privileged (*Bellis*).[3]

---

**2.** The concurrence agreed in large part with the dissent's view of the law but found the subpoena's language impermissible.

**3.** The Second Circuit has summarized the analysis as follows:

In certain limited circumstances, however, an individual may have a fifth amendment privilege against being personally compelled to produce corporate documents. As explained in *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), the act of producing documents may constitute personal testimony conceding the document's existence, their possession or control, or the

fact that the one producing them believes them to be the documents described in the subpoena. When this testimony would be self-incriminating, one has a personal fifth amendment privilege to refuse to comply with a subpoena requesting production. This privilege, though, protects a person "only against being incriminated by his own compelled testimonial communications". *Id.* at 409, 96 S.Ct. at 1580. It does not protect an individual from being incriminated by a third party's testimonial act of producing records, *id.*, including acts by a third party which is a corporation.

■ Harmonizing these potentially conflicting tenets in the one-man corporation, one-man operation context requires us to examine the testimonial nature of the act of production, which has two components: implicit admission of the existence and possession of the documents and implicit authentication of them. Implicitly admitting the existence and possession of the papers in question does not, in this case, "rise[ ] to the level of testimony within the protection of the Fifth Amendment." *Fisher*, 425 U.S. at 411, 96 S.Ct. at 1581. If Roberts is required only to turn all corporate records over to an employee of the corporation [4] (or an independent agent), that act is not "sufficiently testimonial for purposes of the privilege." *Id.* That is, corporations keep records and someone keeps up with those records. Turning those papers over to an employee or an independent agent for compliance with a subpoena is only marginally testimonial—even in the one-man setting. *Id.*[5]

The more serious concern in the corporate setting is the possibility that production of the papers would "implicitly authenticate" the documents by tacitly testifying that the records produced are genuine and are the records requested. *Id.* at 412 n. 12, 96 S.Ct. at 1582 n. 12. The requests in the subpoena sub judice are, in large part, sufficiently general that no impermissible authentication would arise. One request, however, may cross the line and implicate Roberts' individual thought processes.

■ The subpoena, which concerns documents and records related to certain checks issued by the Roberts Corporation, asks for "all original records relating to the following check(s)"; this is a permissible request. Roberts, as custodian, can produce the documents called for by this request without making an act that is personally testimonial. The subpoena goes on, however, to ask for "other records *which identify the purpose* of the check(s), and the *identities and addresses of the parties involved in the transaction represented* by this check(s)." (emphasis added).

To the extent that these requests would require an inquiry into Roberts' thought processes, they are authenticative in nature and subject to the privilege. The Roberts Corporation must produce its documents; but to the extent the papers are producible only by reference to Roberts' own subjective, unrecorded thought processes, Roberts properly may raise his fifth amendment privilege and avoid producing the documents himself.

If the subpoena at issue ran solely to Roberts as an individual, we would be forced to vacate the contempt order and remand to the district court to make findings regarding the potentially testimonial and incriminating nature of producing the documents asked for in those requests that could require Roberts to reveal his thought processes.[6] In the context of this case,

*In re Two Grand Jury Supoenae Duces Tecum,* 769 F.2d 52, 57 (2d Cir.1985); *see also In re Grand Jury Subpoenas Issued to Thirteen Corps.,* 775 F.2d 43, 46 (2d Cir.1985) ("The principals involved in these corporations have received the benefits of the corporate form and they must also accept its obligations, which include the unavailability for the corporations of a fifth amendment privilege against self-incrimination.")

4. It is unclear whether the Roberts Corporation has any employees, although Roberts implies that there are none. A one-shareholder, one-man operation corporation is possible in Nevada, the state in which the Roberts Corporation was incorporated. *See* Nev.Rev.Stat.Ann. secs. 78.035(5), 78.115, 78.130(1), 78.130(4), 78.330.

5. As the *Fisher* Court noted:
   This Court has also time and again allowed subpoenas against the custodian of corporate

documents or those belonging to other collective entities such as unions and partnerships and those of bankrupt businesses over claims that the documents will incriminate the custodian despite the fact that producing the documents tacitly admits their existence and their location in the hands of their possessor.
*Fisher*, 425 U.S. at 411–12, 96 S.Ct. at 1581.

6. Unlike the court in *Doe*, 465 U.S. at 613, 104 S.Ct. at 1242, we do not have any explicit findings of the district court that the act of producing the requested records would be testimonial or self-incriminating. Questions whether documents are testimonial or incriminating "perhaps do not lend themselves to categorical answers; this resolution may instead depend on the facts and circumstances of particular cases or classes thereof." *Fisher*, 425 U.S. at 411, 96 S.Ct. at 1581. *See generally United States v. Reis*, 765 F.2d 1094, 1096 (11th Cir.1985); *Unit-*

however, it is unnecessary to vacate the contempt order. The subpoena in question requires the Will Roberts Corporation to produce the documents; it does not require a particular individual to produce them. The district court recognized this fact when it informed Roberts that he could purge himself of contempt by releasing documents to a third party as representative of the corporation. Thus, Roberts, in effect, was held in contempt by the district court not for refusing to produce corporate records, but for failing—in his corporate representational capacity—to appoint a corporate agent who would comply with the subpoena. Because appointing a corporate agent is not testimonial in nature, holding a corporate officer in contempt for failing to appoint such a representative has no fifth amendment implications.

The procedure we adopt today was well-stated by the United States Court of Appeals for the Second Circuit in *In re Two Grand Jury Subpoenae Duces Tecum*, 769 F.2d 52 (2d Cir.1985):

> When a corporation is asked to produce records, some individual, of course, must act on the corporation's behalf. Usually this will not create any self-incrimination problem, for an employee who produces his corporation records "would not be attesting to his personal possession of them but to their existence and possession by the corporation". *In re Grand Jury Subpoenas Duces Tecum*, 722 F.2d [981] at 986. Yet even if the situation is unusual and a corporation's custodian of records would incriminate himself if he were to act to produce the company's records, this still does not relieve the corporation of its continuing obligation to produce the subpoenaed documents. *United States v. Barth*, 745 F.2d 184, 189 (2d Cir.1984), *cert. denied*, [470] U.S. [1004], 105 S.Ct. 1356, 84 L.Ed.2d 378 (1985). In such a situation the corporation must appoint some other employee to produce the records, and if no existing employee could produce records without incriminating himself by such an act, the corporation may be required to produce the records by supplying an entirely new agent who has no previous connection with the corporation that might place him in a position where his testimonial act of production would be self-incriminating. *Id.* *There simply is no situation in which the fifth amendment would prevent a corporation from producing corporate records, for the corporation itself has no fifth amendment privilege.* See id.

*Id* at 57 (emphasis added).

In fifth amendment terms, the act of having to appoint an agent, while compelled, is not testimonial and therefore does not implicate the fifth amendment. Furthermore, a corporate representative—even the corporation's sole representative—does not commit a testimonial act by providing general corporate records to an agent selected by the corporation. Thus, the analysis we adopt today, as expressed so well by the second circuit, is compulsive because it requires the corporation to act, but does not involve the fifth amendment because it does not require testimonial and incriminating acts by persons.

The crucial point is that the corporation must comply with the subpoena. Accordingly, the order of the district court is AFFIRMED.

ed States v. Melchor Moreno, 536 F.2d 1042, 1046–49 (5th Cir.1976) (setting out procedures

and standards by which trial court acts in weighing claim of fifth amendment privilege).