IN THE MATTER OF A JOHN DOE GRAND JURY
INVESTIGATION.

Worcester. May 4, 1994. - August 3, 1994.

Present: LIACOS, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Constitutional Law*, Self-incrimination. *Corporation*, Close corporation,
Custodian of corporate records. *Grand Jury. Subpoena.*

Discussion of the privilege against self-incrimination under the Fifth
Amendment to the United States Constitution and art. 12 of the Mas-
sachusetts Declaration of Rights in the context of a grand jury's sub-
poena of the records of a corporation. [551-552]
The court stated that a corporation may not rely on the personal privilege
against self-incrimination of art. 12 of the Massachusetts Declaration
of Rights [552], nor does any personal privilege against self-incrimina-
tion of individual representatives of a corporation under art. 12 extend
to the corporation's papers and records. [552-553]
In the circumstances of a criminal investigation in which a grand jury has
issued a subpoena to a corporation for its records, a Superior Court
judge has authority to appoint an alternate keeper of the records for the
corporation if the custodian of the corporate records cannot produce the
records without implicating his personal privilege against self-incrimi-
nation guaranteed under art. 12 of the Massachusetts Declaration of
Rights. [553-554] WILKINS, J., concurring. LIACOS, C.J., dissenting.

MOTIONS filed in the Superior Court Department on May
25, 1993.

The proceeding was heard by *Daniel F. Toomey*, J.

An application for an interlocutory appeal was allowed by
*Nolan*, J., in the Supreme Judicial Court for the county of
Suffolk, and the appeal was reported by him to the Appeals
Court. The Supreme Judicial Court transferred the case on
its own initiative.

*Patricia C. Smith*, Assistant District Attorney, for the
Commonwealth.

*Louis P. Aloise* for the defendant.

LYNCH, J. This is an interlocutory appeal by the Commonwealth from orders of a Superior Court judge denying its motion to compel the appointment of an alternate keeper of records and allowing a motion to quash a grand jury subpoena directed to a closely held corporation. A single justice of this court granted the Commonwealth's application for an interlocutory appeal and ordered the case transmitted to the Appeals Court. We transferred the case here on our own motion and now reverse.

The essential facts are not in dispute. A closely held corporation and two brothers (witnesses) who are its sole shareholders and directors are the focus of a Worcester County grand jury investigation. Pursuant to a grand jury summons the witnesses appeared before the grand jury but refused to testify, exercising their privilege against self-incrimination under both the Fifth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights. Again exercising their privilege against self-incrimination, the witnesses refused to turn over the corporate records described in a subpoena duces tecum directed to the corporation.[1]

The Commonwealth concedes that the subpoenas directed to the individual witnesses cannot be maintained under Federal or State case law in the face of the witnesses' lawful exercise of their privilege against self-incrimination, but contends that the subpoena directed to the corporation should be enforced. The Commonwealth accordingly moved to compel the appointment of an alternate keeper of the records to deliver the previously subpoenaed records to the grand jury.

[1]The subpoena directs in pertinent part: "Please include any and all records of all commercial and residential accounts as well as daily pickups, [roll-offs] including customer list, all billing and payment records, container sizes, and frequency of pickups from 1-1-89 to the present date.

"Please include any and all records of where materials picked up from customers [were] disposed of including names and addresses of disposal sites, payment records, and container sizes from 1-1-89 to the present date."

The judge denied the motion reasoning that art. 12 requires a broader interpretation than that afforded the Fifth Amendment by the United States Supreme Court, and that compelling the corporation to appoint a new keeper of the records would result in a "derogation of the custodian's constitutional protection."

*Discussion.* The right of an individual to exercise his privilege not to incriminate himself extends to grand jury proceedings. *Commonwealth* v. *Doe*, 405 Mass. 676, 678 (1989). *Taylor* v. *Commonwealth*, 369 Mass. 183, 187-188 (1975). The witnesses concede that the Fifth Amendment offers them no protection from their obligation to comply with the grand jury's subpoena of the corporate records. See *Braswell* v. *United States*, 487 U.S. 99, 108-109 (1988). They argue, however, that the judge correctly applied a more liberal construction of art. 12 and that his conclusion that they could not be compelled to comply with the subpoena directed to the corporation and its records was correct.[2]

We held in *Commonwealth* v. *Doe, supra* at 678, that "a custodian of corporate records may invoke his art. 12 right against self-incrimination in response to a subpoena for those corporate records when the act of production itself would be self-incriminating." We based our decision on the Massachusetts Constitution and Declaration of Rights.[3] In so doing, we explicitly rejected the proposition that a custodian's act in turning over corporate records is deemed to be one of the corporation only and not an act of the individual. *Doe, supra* at 679. "The act of production is demanded *of the witness* and the possibility of self-incrimination is inherent in that act" (emphasis in original). *Id.* We also stated, however, "The fact that a particular record custodian has a valid priv-

---

[2]The witnesses make no reasoned argument based on the requirement of probable cause specified by art. 14 of the Massachusetts Declaration of Rights, and therefore we decline to comment on that issue.

[3]We noted in *Commonwealth* v. *Doe*, 405 Mass. 676, 679 (1989), that the United States Supreme Court reached a contrary decision in interpreting the Fifth Amendment. *Braswell* v. *United States*, 487 U.S. 99, 108-109 (1988).

ilege does not excuse the corporation from its obligation." *Id.* at 681.

It is well settled that the Fifth Amendment privilege against self-incrimination, being a personal right, cannot be exercised by a corporation of any size. *Bellis* v. *United States,* 417 U.S. 85, 89-91 (1974) ("privilege against compulsory self-incrimination should be 'limited to its historic function of protecting only the natural individual from compulsory incrimination through his own testimony or personal records' "), quoting *United States* v. *White,* 322 U.S. 694. 701 (1944); *Hale* v. *Henkel,* 201 U.S. 43, 69-70 (1906) ("right of a person under the Fifth Amendment to refuse to incriminate himself is purely a personal privilege" and was not intended to extend to corporations). This court, too, has indicated that the constitutional guaranty of art. 12 is a personal privilege. *Commonwealth* v. *Wood,* 302 Mass. 265, 269 (1939). *Ross* v. *Crane,* 291 Mass. 28, 32-33 (1935). In applying the art. 12 protection against self-incrimination, we have suggested that it is applicable only to natural persons. See *Doe, supra* at 679 ("in so far as [a corporate representative] is a natural person he is entitled to the protection of art. 12"). "[A] corporation is a legal fiction . . . [and] it has no existence separate and distinct from those whom it has clothed with authority and commissioned to act for it." *Commonwealth* v. *Beneficial Fin. Co.,* 360 Mass. 188, 264 (1971), cert. denied sub nom. *Farrell* v. *Massachusetts,* 407 U.S. 910, and sub nom. *Beneficial Fin. Co.* v. *Massachusetts,* 407 U.S. 914 (1972). We see no reason, therefore, to depart from the Federal practice of declining to confer on corporations a personal privilege against self-incrimination. Accordingly, we rule that the corporation may not rely on art. 12 protection in refusing to comply with the subpoena.

Neither does the personal privilege against self-incrimination of individual representatives of a corporation extend to the corporation's papers and records. We agree with the United States Supreme Court that "the papers and effects which the privilege protects must be the private property of the person claiming the privilege, or at least in his possession

in a purely personal capacity." *Bellis* v. *United States, supra* at 90, quoting *United States* v. *White, supra* at 699. This view harmonizes with our decision in *Doe, supra,* where we held that only the "act of production" of corporate records was subject to a representative's art. 12 rights. Cf. *In re Grand Jury No. 86-3 (Will Roberts Corp.),* 816 F.2d 569, 572 (11th Cir. 1987). We did not hold that the representative had a personal right against self-incrimination in the documents themselves. The result is that the custodian retains his privilege against incrimination by compelled oral testimony and by an act of production, but that the voluntary act of incorporation cannot insulate the corporate records themselves from disclosure to the grand jury.

That the corporation in this case is a closely held corporation does not relieve it of its obligation to comply with the subpoena. The subpoena was directed to the corporation, not to an individual representative. Having voluntarily adopted the corporate structure, the corporate principals cannot shield the corporation from a grand jury investigation by seeking to extend their individual privileges against self-incrimination to the corporation. If the custodian of the corporate records cannot produce the records without implicating his personal art. 12 rights, an alternate keeper of the records can be appointed. Such an appointment has no testimonial attributes and, as such, does not implicate art. 12 protection. *Id.* at 574. The concerns that we expressed in *Commonwealth* v. *Doe, supra* at 679, do not arise from the mere act of appointing a new keeper of the records.[4] We adopt the reasoning of the United States Court of Appeals for the Sec-

---

[4]The corporation's act of production of the documents cannot be used to incriminate a particular individual. Under the Fifth Amendment analysis, the Court has stated that the "Government may not introduce into evidence . . . the fact that the subpoena was served upon and the corporation's documents were delivered by one particular individual." *Braswell* v. *United States, supra* at 118. "Because the jury is not told that the defendant produced the records, any nexus between the defendant and the documents results solely from the corporation's act of production and other evidence in the case." *Id.*

ond Circuit in *In re Two Grand Jury Subpoenae Duces Tecum*, 769 F.2d 52, 57 (2d Cir. 1985):

> "When a corporation is asked to produce records, some individual, of course, must act on the corporation's behalf. Usually this will not create any self-incrimination problem, for an employee who produces his corporation's records 'would not be attesting to his personal possession of them but to their existence and possession by the corporation.' *In re Grand Jury Subpoenas Duces Tecum*, [722 F.2d 981, 986 (2d Cir. 1983)]. Yet even if the situation is unusual and a corporation's custodian of records would incriminate himself if he were to act to produce the company's records, this still does not relieve the corporation of its continuing obligation to produce the subpoenaed documents. *United States* v. *Barth*, 745 F.2d 184, 189 (2d Cir. 1984), *cert. denied*, [470 U.S. 1004 (1985)]. In such a situation the corporation must appoint some other employee to produce the records, and if no existing employee could produce records without incriminating himself by such an act, then the corporation may be required to produce the records by supplying an entirely new agent who has no previous connection with the corporation that might place him in a position where his testimonial act of production would be self-incriminating. *Id.* There simply is no situation in which the fifth amendment would prevent a corporation from producing corporate records, for the corporation itself has no fifth amendment privilege. See *id.*"

In summary, we hold that, since the subpoena was directed to the corporation, the corporation, which has no privilege against self-incrimination, can comply without implicating any individual's art. 12 protections. It should be understood that an order to appoint an alternate keeper of the records is not a mandate to the witnesses to say or to do anything.

The orders of the Superior Court judge denying the Commonwealth's motion to compel the corporation to appoint an

alternative keeper of its records and quashing the subpoena directed to the corporation are reversed.

*So ordered.*


WILKINS, J. (concurring). I agree that an order may be lawfully issued to compel the appointment of an alternate keeper to deliver the previously subpoenaed records to the grand jury. The plurality opinion just barely hints, however, at some of the substantial issues underlying such an order and at the possibility that such an order will have no practical effect.

There may well be a need for a showing of probable cause to seize the records. The court may not be justified in simply directing a warrantless search for them. The keeper thus may need a search warrant issued on probable cause to believe that, more likely than not, the records contain evidence concerning the commission of a crime. The witnesses in turn may or may not have standing to object to any unlawful seizure of particular records.

Certainly the witnesses have no obligation to point to or to identify the records. Such conduct could be testimonial and self-incriminatory. The person appointed as alternate keeper, therefore, may have no knowledge of where to look for the records or how to gain access to them. Although I disagree with the dissent's statement that the plurality opinion embraces a fiction, an order compelling the appointment of an alternate keeper of the records may be illusory because it will serve no worthwhile purpose of the Commonwealth.


LIACOS, C.J. (dissenting). In *Commonwealth* v. *Doe,* 405 Mass. 676 (1989), this court, in a similar case, declined to follow Federal jurisprudence holding that the Fifth Amendment to the Federal Constitution provides no protection against self-incrimination to the custodian of corporate records. See *Braswell* v. *United States,* 487 U.S. 99, 108-109

(1988). Writing of *Braswell*, we said: "In that case the Supreme Court held that a custodian of corporate records cannot rely upon the Fifth Amendment privilege against self-incrimination. *Id.* at 109. The Court reasoned that the custodian acts only as a representative, and that his act, therefore, is deemed to be one of the corporation only and not an act of the individual. *Id.* at 110. *We decline to engage in such a fiction*" (emphasis supplied). *Doe, supra* at 679.

We went on in *Doe* to rely on the protections of art. 12 of the Declaration of Rights of the Massachusetts Constitution and to hold that "an *individual* cannot be held in contempt for refusing to turn over [corporate] records when the act of doing so would incriminate *him* personally" (emphasis in original). *Doe, supra* at 680.

Yet today the court embraces a new fiction. Namely, that all can be made right under art. 12 by the artifice of a court-appointed keeper of corporate records so that the Commonwealth can evade the mandate of art. 12. Thus, states the court: "If the custodian of the corporate records cannot produce the records without implicating his personal art. 12 rights, an alternate keeper of the records can be appointed." *Ante* at 553.

The word "fiction" has been defined generally as: "An imaginative creation or a pretence that does not represent actuality but has been invented." American Heritage Dictionary 500 (2d C. ed. 1991). The same resource defines a fiction in law as: "Something accepted as fact without any real justification, merely for the sake of convenience." *Id.*

I believe the dictionary definitions sum up what the court is doing today in regard to this closely held corporation. The practical effect of its ruling is that the only *real* persons involved, the two persons who are sole officers and corporation directors (one of whom is the keeper of the corporate records) may be reached by the prosecutorial device of using a grand jury's powers to obtain records to indict and perhaps convict these individuals. All this, the court holds, is permissible, ignoring not only the protections of art. 12 but also the

requirement of probable cause specified by art. 14 of the Declaration of Rights of the Massachusetts Constitution.

In my view, the thoughtful memorandum of decision by Judge Toomey of the Superior Court bears closer resemblance to reality. He wrote: "That preclusion, logically and constitutionally, extends to the compelling of custodians to deliver such documents to a third party. An order of this court directing the witnesses to transfer custody of corporate papers to a third party would have the effect of compelling the witnesses to testify as to the existence and location of the documents as well as the degree of control they exerted over the documents. The witnesses would not be testifying before the grand jury [themselves], but would nonetheless be providing incriminating information in connection with the grand jury investigation. The fact that a transfer to a grand jury conduit may be less incriminating than a direct transfer of documents to the grand jury does not alter the testimonial nature of the act and cannot justify a circumvention of the protection of art. 12. The mere transfer of documents by the witnesses to a third party may provide the Commonwealth's investigators with information regarding the existence, control, and location of the documents which, in turn, might well prove crucial in an investigation and prosecution of the witnesses. A conduit will thus not satisfy the constitutional imperative.

"Finally, just as this court cannot order the witnesses to transfer the documents to a third party, it cannot order a third party to take possession of the corporate papers. Such an order would likely amount to a warrantless seizure in violation of the Fourth Amendment to the United States Constitution and [art.] 14 of the Declaration of Rights of the Massachusetts Constitution. See *Commonwealth* v. *A Juvenile (No. 2)*, 411 Mass. 157 (1992). The status of any appointee as a private citizen would not change the fact that that person would be acting as an agent for the Commonwealth in seizing the corporate documents."

Judge Toomey has it right. The court does not. Accordingly, I dissent.